LATHAM & WATKINS LLP
James K. Lynch (CA Bar No. 178600)
jim.lynch@lw.com
Marcy C. Priedeman (CA Bar No. 258505)
marcy.priedeman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

LATHAM & WATKINS LLP
Richard P. Bress (Admitted Pro Hac Vice)
rick.bress@lw.com
Michael E. Bern (Admitted Pro Hac Vice)
michael.bern@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

*Attorneys for Plaintiff*
The American Beverage Association

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE AMERICAN BEVERAGE ASSOCIATION, CALIFORNIA RETAILERS ASSOCIATION, CALIFORNIA STATE OUTDOOR ADVERTISING ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Civil Action No. 3:15-cv-03415-EMC<br><br>**REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:  April 7, 2016<br>Time:  1:30 p.m.<br>Judge:  Edward M. Chen<br>Courtroom:  5 |

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

I.      PLAINTIFFS' CLAIM IS SUBSTANTIALLY LIKELY TO SUCCEED ....................... 2

      A.      The Mandate Is Unconstitutional As Applied To Commercial Speech ................. 2

            1.      The City's Warning Does Not Meet *Zauderer*'s Requirements ................. 2

                  a.      The Warning Is Not Factual And Uncontroversial ......................... 3

                  b.      The City's Warning Is Unduly Burdensome And Chills Speech ................................................................................................ 8

            2.      The Warning Mandate Cannot Survive Heightened Scrutiny .................. 11

                  a.      The Warning Mandate Does Not Directly and Materially Advance The City's Interest ........................................................... 11

                  b.      The Warning Mandate Is More Extensive Than Necessary .......... 13

      B.      The Mandate Is Unconstitutional As Applied To Noncommercial Speech ........... 13

II.     THE OTHER FACTORS SUPPORT AN INJUNCTION ............................................... 15

CONCLUSION ......................................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Meat Institute v. United States Department of Agriculture,*
760 F.3d 18 (D.C. Cir. 2014) ..................................................................................................... 3

*Bolger v. Youngs Drug Products Corp.,*
463 U.S. 60 (1983) ................................................................................................................ 14, 15

*Cal-Almond, Inc. v. United States Department of Agriculture,*
14 F.3d 429 (9th Cir. 1993) .................................................................................................. 11, 12

*Central Hudson Gas & Electric Corp. v. Public Service Commission,*
447 U.S. 557 (1980) ...................................................................................................................... 11

*Consolidated Cigar Corp. v. Reilly,*
218 F.3d 30 (1st Cir. 2000) ............................................................................................................ 9

*CTIA – The Wireless Ass'n v. City & County of San Francisco,*
494 F. App'x 752 (9th Cir 2012) ........................................................................................... 3, 5, 7

*CTIA – The Wireless Ass'n v. City of Berkeley,*
No. 15-cv-2529-EMC, 2016 WL 324283 (N.D. Cal. Jan. 27, 2016) ..................................... 11

*CTIA – The Wireless Ass'n v. City of Berkeley,*
No. 15-cv-2529-EM, 2015 WL 5569072 (N.D. Cal. Sept. 21, 2015) ...................................... 5

*Discount Tobacco City & Lottery, Inc. v. United States,*
674 F.3d 509 (6th Cir. 2012) ..................................................................................................... 10

*Elrod v. Burns,*
427 U.S. 347 (1976) ...................................................................................................................... 15

*Ibanez v. Florida Department of Business & Professional Regulation,*
512 U.S. 136 (1994) ...................................................................................................................... 10

*Jordan v. Jewel Food Stores, Inc.,*
743 F.3d 509 (7th Cir. 2014) ..................................................................................................... 14

*Metro Lights L.L.C. v. City of Los Angeles,*
551 F.3d 898 (9th Cir. 2009) ..................................................................................................... 12

*Metromedia, Inc. v. City of San Diego,*
453 U.S. 490 (1981) ...................................................................................................................... 12

*Procter & Gamble Co. v. Amway Corp.,*
242 F.3d 539 (5th Cir. 2001) ..................................................................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

                                                                                           **Page(s)**

*Reno v. ACLU,*
    521 U.S. 844 (1997) ........................................................................................... 9

*Retail Digital Network, LLC v. Appelsmith,*
    810 F.3d 638 (9th Cir. 2016) .......................................................................... 2, 13

*Riley v. National Federation of the Blind,*
    487 U.S. 781 (1988) ......................................................................................... 13

*Tillman v. Miller,*
    133 F.3d 1402 (11th Cir. 1998) ...................................................................... 9, 10

*Tillman v. Miller,*
    No. 1:95-CV-1594-CC, 1996 WL 767477 (N.D. Ga. Sept. 30, 1996), *aff'd,*
    133 F.3d 1402 (11th Cir. 1998) .......................................................................... 10

*Transportation Alternatives, Inc. v. City of New York,*
    218 F. Supp. 2d 423 (S.D.N.Y. 2002), *aff'd,* 340 F.3d 72 (2d Cir. 2003) .................... 14, 15

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,*
    898 F.2d 914 (3d Cir. 1990) ............................................................................. 5

*Virginia v. Hicks,*
    539 U.S. 113 (2003) ...................................................................................... 9, 15

*Williams-Yulee v. Florida Bar,*
    135 S. Ct. 1656 (2015) ................................................................................. 11, 13

*Zauderer v. Office of Disciplinary Counsel,*
    471 U.S. 626 (1985) ........................................................................................ 1, 7

**STATUTES**

S.F. Health Code § 4201 ..................................................................................... 3, 12, 13

S.F. Health Code § 4202 .......................................................................................... 14

S.F. Health Code § 4203(d) ...................................................................................... 12

**REGULATIONS**

21 C.F.R. § 101.60(b)(2)(i)(A) ............................................................................... 6, 11

21 C.F.R. § 184.1866 ............................................................................................ 4

79 Fed. Reg. 11,880 (Mar. 3, 2014) ......................................................................... 1, 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

Page(s)

## OTHER AUTHORITIES

CNBC Interview with Scott Weiner at 3:21 (June 10, 2015)
    http://video.cnbc.com/gallery/?video=3000387369 ............................................................ 6, 7

Sohyun Park et al., Center for Disease Control and Prevention, Morbidity and
    Mortality Weekly Report, Prevalence of Sugar-Sweetened Beverage Intake
    Among Adults — 23 States and the District of Columbia, 2013 (Feb. 26,
    2016), http://www.cdc.gov/mmwr/volumes/65/wr/mm6507a1.htm ..................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

# INTRODUCTION

When the City enacted the Warning Mandate, its sponsor confirmed what its text makes clear—that it was meant to "warn[] people that drinking [beverages with added sugar] increases your risk of diabetes, obesity, and tooth decay" and contributes to health risks "in a way that other products do not." *See infra* at 6.  The City now concedes (Opp. 9) that those positions are debatable, because many respected scientists believe that "added sugars do not contribute to weight gain more than any other source of calories," 79 Fed. Reg. 11,880, 11,904 (Mar. 3, 2014), and that when consumed as "part of a diet that balances caloric intake with energy output, … beverages with added sugar do[] not contribute to obesity or diabetes," Report of Dr. Richard A. Kahn ¶ 14, ECF No. 50-24.  Because the positions the Warning conveys are just the City's opinions on matters subject to substantial debate, the Warning does not qualify as "purely factual and uncontroversial" information under *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985).

To avoid that conclusion, the City denies that its Warning conveys the controversial opinions that motivated and define its scope and text.  Instead, the City insists the Warning merely communicates the limited proposition that *over*consumption of sugar-sweetened beverages—no more or less than the overconsumption of *any* source of calories—contributes to obesity and diabetes.  Opp. 11.  That implausible construction conflicts with the Warning's text and scope, as well as with how the City has publicly justified it.  It also conflicts with the opinion of the City's own expert, who admits the Warning communicates that beverages with added sugar are "unhealthy" and will lead consumers "to avoid added sugar" as distinguished from other sources of calories.  Report of David Hammond, Ph.D. ¶¶ 62, 66, ECF No. 56-2.

The City's effort to decouple the Warning from the City's more critical and controversial views about sugar-sweetened beverages is unpersuasive.  It also underscores the insurmountable tension created by the City's efforts to sustain the Mandate under *Zauderer*.  Because consumers could interpret the Warning to mean that drinking beverages with added sugar *inherently* contributes to obesity, diabetes, and tooth decay, or does so distinctively relative to other sources of calories, its message is not factual and uncontroversial and it cannot be sustained under

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

*Zauderer.*  But even if the Warning did not convey those messages, it would still fail under *Zauderer* for a different reason:  If, as the City now argues, the Warning merely conveys that the excess consumption of calories contributes to obesity and diabetes, the substantial burden the Warning Mandate imposes solely on Plaintiffs' speech about their products would be undue.

The heightened scrutiny that applies outside of *Zauderer* is even more damning to the City's position.  Because most beverage advertising is exempted from the Warning Mandate, and because the City acknowledges that its exemptions of various media are wholly unrelated to health interests, the Warning Mandate will not directly and materially advance the City's stated interest.  And because the City has the obvious option of communicating its controversial opinions itself, the Warning Mandate burdens far more speech than necessary.

Finally, the City does not contest that requiring the Warning on noncommercial speech would fail strict scrutiny.  Contrary to the City's belief, Plaintiffs' speech on numerous cultural, social, and health issues is core noncommercial speech that is not rendered commercial simply because Plaintiffs use their names or logos to identify this speech as their own.  As applied to Plaintiffs' noncommercial speech, the Warning Mandate is invalid; and because the Warning Mandate burdens a substantial amount of such protected speech, it should be enjoined.

## I. PLAINTIFFS' CLAIM IS SUBSTANTIALLY LIKELY TO SUCCEED

### A. The Mandate Is Unconstitutional As Applied To Commercial Speech

The City does not dispute that it has the burden to prove the Warning Mandate's constitutionality by establishing either that (1) its compelled Warning is "purely factual, uncontroversial, not unduly burdensome, and reasonably related to the Government's interest," as required by *Zauderer*,[1] or (2) it survives the "heightened judicial scrutiny" applicable to laws restricting commercial speech under *Retail Digital Network, LLC v. Appelsmith,* 810 F.3d 638, 642 (9th Cir. 2016).  Mot. 10, 9, ECF No. 50 (citations omitted).  The City meets neither burden.

#### 1. The City's Warning Does Not Meet *Zauderer*'s Requirements

---

[1] The City characterizes *Zauderer* as a "deferential" standard.  Opp. 6.  But *Zauderer* authorizes deferential review *only if* the government first proves that its warning is factual and uncontroversial—an inquiry that is not deferential.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1

### a.    The Warning Is Not Factual And Uncontroversial

2          In their opening brief, Plaintiffs demonstrated that the Warning conveys that drinking

3    beverages with added sugar is dangerous and should be avoided; inherently contributes to

4    obesity, diabetes, and tooth decay (*i.e.*, without regard to overall diet and lifestyle); and

5    contributes to obesity, diabetes, and tooth decay uniquely and more so than other sources of

6    calories.  Mot. 11-12; Report of Peter N. Golder, Ph.D. ¶¶ 41, 46-53, ECF No. 50-25; Kahn Rep.

7    ¶¶ 72-81.  The City accepts for present purposes that those messages are, at minimum, debatable.

8    *See* Opp. 9 ("The Court can accept Dr. Kahn's opinions—that there is some debate about

9    whether SSBs pose 'unique' health risks, and that they can safely be consumed in moderation

10   without inevitably leading to obesity and diabetes ….").  That concession is fatal, because the

11   Warning fails as long as it "*could prove to be interpreted by consumers* as expressing

12   [messages]" that are not purely factual and uncontroversial.[2]  *CTIA – The Wireless Ass'n v. City*

13   *& Cnty. of San Francisco*, 494 F. App'x 752, 753 (9th Cir 2012) ("*CTIA–SF*") (emphasis added).

14         The City strains to overcome that problem.  Even though the Warning Mandate (1)

15   requires a large "WARNING" solely on ads for beverages with added sugar, that (2) warns

16   exclusively about the dangers of "drinking beverages with added sugar" and (3) is intended "to

17   inform the public of the presence of added sugars" in beverages, S.F. Health Code § 4201, the

18   City argues that consumers could not interpret it to suggest there is anything especially harmful

19   about beverages with added sugar as compared to other sources of calories.  *See* Opp. 9-11.  That

20   argument blinks reality.  It is refuted by Plaintiffs' experts.[3]  Golder Rep. ¶¶ 9, 54-62; Rebuttal

21

22   [2] The City argues that "purely factual and uncontroversial" means only that the statement must
be "accurate."  Opp. 7 (citation omitted).  Plaintiffs agree with the D.C. Circuit that the standard
23   is more demanding than that.  *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir.
2014) (en banc).  But because the City agrees there is a genuine "dispute about [the] factual
24   accuracy" of the messages Plaintiffs believe the Warning conveys, *id.*, the question of *how much*
of a dispute over accuracy is necessary to make a statement "controversial" should be academic.

25   [3] The City invests significant energy in trying to discredit Dr. Kahn.  Opp. 9-13.  But the City's
personal attack on his credibility, independence, and integrity is baseless.  Regardless of whether
26   the City disagrees with his conclusions, Dr. Kahn has dedicated his life to diabetes care and
education, served for decades as the Chief Scientific Officer of the American Diabetes
27   Association, and refused to accept any compensation for his participation in this case.  He is
neither a fringe scientist nor an industry mouthpiece.  The City is equally off base when it
28   questions Dr. Kahn's competence to opine on the messages conveyed by the Warning.  Dr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1   Report of Peter N. Golder ¶¶ 33-54 (attached to the Declaration of James Lynch as Exhibit B);

2   *id.* at 39 (consumers will focus on "contrast between labeled and unlabeled products"); Kahn

3   Rep. ¶¶ 72-75, 79.  It contradicts the City's own expert's contentions that the Warning sends a

4   message about "the unhealthy effects of *added sugar*"—not *calories*—and will render consumers

5   "more, rather than less, likely *to avoid added sugar*."  Hammond Rep. ¶ 62 (emphasis added).

6   And it is irreconcilable with the guiding view of the Warning Mandate's sponsor that beverages

7   with added sugar pose unique health hazards.  *See infra* at 6.  Because the Warning's text,

8   format, scope, and context—and *both* parties' experts—show that it conveys messages that are

9   hotly debated, the Warning Mandate fails under *Zauderer*.

10          (1)     Contrary to the City's argument (Opp. 11), the Warning conveys that beverages

11   with added sugar are dangerous and should be avoided.  The City's own expert, Dr. Hammond,

12   repeatedly acknowledges that the Warning's size, format, text, scope, and attribution to the

13   government are designed to convey precisely that view.  *See, e.g.*, Hammond Rep. ¶ 22 ("Larger

14   warnings … increas[e] perceptions of risk."); *id.* ¶ 27 (The word "Warning" communicates that

15   drinking beverages with added sugar could "result in serious injury"); *id.* ¶¶ 28-29 (City's "clear,

16   explicit identification of the health outcomes from drinking beverages with added sugar" will

17   increase the "perceived dangerousness" of such beverages); *id.* ¶ 62 (Warning will make

18   consumers more likely "to avoid added sugar"); Golder Rep. ¶¶ 9, 52-62.  But unlike the tobacco

19   warnings the City's Warning was designed to mirror, the message that *these* products are

20   dangerous and should be avoided is a disputed opinion, not a fact.  *See* Opp. 9 (acknowledging

21   that beverages with added sugar "can safely be consumed in moderation"); 21 C.F.R. § 184.1866

22   (added sugar "generally recognized as safe"); 79 Fed. Reg. 11,880, 11,904 (Mar. 3, 2014)

23   ("[A]dded sugars do not contribute to weight gain more than any other source of calories.").

24   _____

25   Kahn's job responsibilities included developing nutrition guidelines and scientific statements related to nutrition and diabetes, and he played a leading role in developing the initial nutrition facts label on all packaged foods.  *See* Rebuttal Report of Richard A. Kahn ¶¶ 73-76 (attached to
26   the Declaration of James Lynch as Exhibit A).  That experience more than sufficiently establishes his bona fides to opine on whether the Warning's claims about obesity and diabetes
27   convey accurate or misleading information.  In any event, as Professor Golder notes, Golder Reb. Rep. ¶¶ 13-14, 16-19, 26-27, 36-41, and is explained more fully below, the City's own expert
28   largely supports his and Dr. Kahn's conclusions.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1      (2)    The Warning also states without qualification that drinking beverages with added

2  sugar "contributes to obesity, diabetes, and tooth decay" even though that statement is inaccurate

3  for the many San Franciscans who balance their caloric intake and physical activity.  Opp. 10-11;

4  *see* Report of Walter Willett ¶ 59, ECF No. 56-1.[4]  The City asserts that the Warning should be

5  "understood to refer to the quantities in which SSBs are commonly sold and in which they are

6  consumed by many people" and merely to warn consumers against overconsumption of calories

7  from any source.  Opp. 11; *see also id.* at 10 ("[T]he warning does not claim that some property

8  of SSBs other than calories contributes to obesity …").  But the Warning cautions about

9  "beverages with added sugar," not "calories."  And it warns consumers about "drinking," not

10  "overconsuming."[5]  The City offers no support for its claim that the Warning will be understood

11  only to caution against overconsumption.  Nor could it, given that its own expert concludes the

12  opposite—that the Warning "clearly identif[ies] the [behavior] that leads to the health effect"

13  about which it warns—*i.e.*, "[d]rinking beverages with added sugar."  Hammond Rep. ¶¶ 28-29.

14      Courts are required, moreover, to consider how a compelled warning could be

15  "interpreted by consumers" in *context*.  *CTIA–SF*, 494 F. App'x at 753; *cf. U.S. Healthcare, Inc.*

16  *v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990).  Here, the City's post hoc

17  insistence that its Warning sends a message only about overconsumption of calories, Opp. 1,

18  cannot be reconciled with the Warning Mandate's application to beverages with as few as *25*

19  *calories*—as well as dozens of others defined as "low calorie" by the FDA.  *See* Opp. 5; Mot. 14

---

[4] Over 75% of Californians consume *less* than one beverage with added sugar a day.  Sohyun Park et al., Center for Disease Control and Prevention, Morbidity and Mortality Weekly Report, *Prevalence of Sugar-Sweetened Beverage Intake Among Adults — 23 States and the District of Columbia, 2013* (Feb. 26, 2016), http://www.cdc.gov/mmwr/volumes/65/wr/mm6507a1.htm.  And roughly 90% of San Francisco adults are not obese—the best rate in the State.  *See* Mot. 13.

[5] To the extent the City argues that consumers will view its Warning as a macro commentary about the contribution of the overconsumption of sugar-sweetened beverages to "the social epidemic of obesity," Opp. 19; *see also* Opp. 10, even its own expert disagrees.  As Dr. Hammond explains, consumers understand safety warnings to identify conduct (here, drinking sugar-sweetened beverages) they should avoid to prevent harm *to them*.  *See* Hammond Rep. ¶¶ 14, 62-66.  This Warning fails, among other reasons, because it conveys a debatable opinion about a product's "inherent biological" risk, rather than a potential "behavioral" risk related to certain individuals' use of the product.  *CTIA – The Wireless Ass'n v. City of Berkeley*, No. C-15-2529 EMC, 2015 WL 5569072, at *9 n.7 (N.D. Cal. Sept. 21, 2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

n.8 (citing 21 C.F.R. § 101.60(b)(2)(i)(A)). By requiring warnings on sugar-sweetened beverages that plainly do not contribute to obesity on account of their calories, or others (like grapefruit juice) that have low consumption rates, *cf.* Opps. 5 & n.4, the City conveys that its Warning is not merely admonishing against the overconsumption of calories.

(3) Finally, contrary to what the City claims (Opp. 11), the Warning conveys that beverages with added sugar contribute to obesity and diabetes differently from and more so than other sources of calories. That is common sense: a warning solely about "drinking beverages with added sugar" and imposed only on ads for beverages with added sugar will (and surely could) be interpreted to signal some unique danger "specifically associated with [using those] product[s]." Hammond Rep. ¶ 64 (emphasis omitted). Indeed, that is the point of most targeted consumer product warnings, such as those on tobacco, alcohol, and pharmaceuticals.

The City protests that the Warning does not explicitly say that sugar-sweetened beverages are worse for consumers than other foods or beverages. Opp. 9-12. But its own expert concedes that the Warning conveys that view, admitting it will "work as intended [to] influence the ways in which consumers perceive *SSBs*, such that they regard them as less healthy." Hammond Rep. ¶ 66 (emphasis added); *see id.* ¶ 62 (Warning conveys message about "the unhealthy effects of added sugar," and will lead consumers to "avoid added sugar"); Opp. 5 ("[T]he warning is likely to be effective at informing consumers of the health risks of *SSBs*, changing attitudes towards *SSBs*, and persuading consumers to adopt healthier habits." (emphasis added)).

The City's argument that the Warning does not convey that beverages with added sugar contribute to obesity and diabetes in any respect "beyond their caloric contribution," Opp. 9, also conflicts with the view of the Warning Mandate's sponsor, who explained on national media that the Warning is "*not about calories in calories out*, it's about a massive amount of liquid sugar that is absolutely increasing people's risk of diabetes *in a way that other products do not*." CNBC Interview with Scott Weiner at 3:21 (June 10, 2015), http://video.cnbc.com/gallery/?video=3000387369 (emphasis added); *see id.* at 2:47 ("[I]t's not about calories, it's about sugar. … Liquid sugar is a unique health problem."). The City now runs from the notion that the Warning conveys those beliefs, because it has been forced to admit

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1    that these are matters of scientific uncertainty and debate, not fact.  Opp. 9.  But consumers are

2    likely to understand the Warning in the spirit in which it was written and defended.[6]

3           The City's remaining counterarguments are equally unpersuasive.  The City asserts that it

4    is "entitled to focus [its Warning] on SSBs,"[7] Opp. 19, and accuses Plaintiffs of making an "end-

5    run" around *Zauderer*'s recognition that a disclosure need not "get at all facets of the problem it

6    is designed to ameliorate," *id.* at 11 (quoting 471 U.S. at 651 n.14).  But this is not an equal

7    protection inquiry into whether the City can "attack problems piecemeal."  *Zauderer*, 471 U.S. at

8    651 n.14.  It is a *First Amendment* inquiry about whether, by requiring warnings only on a

9    particular subset of caloric sources, the City can compel private parties to convey the non-factual

10   and controversial message that their products are more dangerous than other caloric sources.

11   *Zauderer* makes clear that it may not do that under the guise of acting incrementally.

12          The City finally invokes this Court's recent admonition that *Zauderer*'s "factual and

13   uncontroversial" requirement cannot be "so easily manipulated that it would effectively bar any

14   compelled disclosure by the government."  Opp. 11 (citation omitted)).  No such slippery-slope

15   concern is implicated here.  As discussed, the City concedes that the Warning is not factual or

16   uncontroversial (and thus not protected by *Zauderer*) if it could convey that drinking beverages

17   with added sugar inherently contributes to health risks or is distinctively risky.  The ruling

18   Plaintiffs seek here—that the Warning fails for lack of a consensus that the covered products are

19   _____

20   [6] As the Ninth Circuit explained when striking down another San Francisco compelled speech
     requirement, the City loses under *Zauderer* if its compelled warning "*could* prove to be

21   interpreted by consumers" in a way that is non-factual or controversial.  *See CTIA–SF*, 494 F.
     App'x at 753 (emphasis added).  Here, Plaintiffs' claim that the Warning *could* be interpreted in

22   the debatable way that *both* sides' experts suggest it will be is bolstered by the City's effective
     admission that the message conveyed by the Warning—"[food or beverage X] contributes to

23   obesity, diabetes, or tooth decay" is "ambiguous."  City's Responses to CRA's First Requests
     For Admission ¶¶ 37-38 (Mar. 10, 2016) (attached to the Declaration of James Lynch as Exhibit

24   C) (suggesting such language could be read to mean "consuming the specified food theoretically
     could contribute to obesity, diabetes, or tooth decay if it were consumed in sufficient quantities

25   or … in the real world the specified food actually contributes to the present high rates of obesity,
     diabetes, or tooth decay that motivated San Francisco to enact the warning ordinance.").

26   Plaintiffs are aware of no court anywhere to uphold under *Zauderer* compelled speech that the
     government admits is "ambiguous."

27   [7] The City defends its choice by insisting that sugar-sweetened beverages are the single largest
     source of *added sugar* in American diets.  But beverages with added sugar account for only 4.5%

28   of calories consumed by adults—a number that continues to decline.  *See* Kahn Rep. ¶¶ 26, 30.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1    inherently dangerous or contribute to the warned-of harm more than products bearing no

2    warning—would not undermine other product warnings (e.g., tobacco, alcohol use while

3    pregnant, drug side effects, etc.) that accurately warn of unique, inherent risks.

4           Because the record in this case—including both sides' experts and the City's own

5    statements—confirms that the Warning conveys messages that are at minimum controversial, the

6    Warning cannot be sustained under *Zauderer*.

7                    **b.      The City's Warning Is Unduly Burdensome And Chills Speech**

8           The City's Warning also fails under *Zauderer* because it so heavily burdens Plaintiffs'

9    intended speech that it will chill many from speaking on covered media altogether.  Mot. 15-18.

10   The City's newfound claim that its Warning does not convey that beverages with added sugar

11   contribute to obesity and diabetes "beyond their caloric contribution"—although necessary to

12   survive *Zauderer*'s first prong—dooms it under this one.  If the Warning does not communicate

13   that there is anything especially harmful about beverages with added sugar, and makes no claim

14   that they contribute to obesity or diabetes "beyond their caloric contribution," (Opp. 9), then the

15   City cannot defend the substantial burden it has imposed on Plaintiffs' speech alone.

16          The City largely leaves unrebutted Plaintiffs' showing that the Warning Mandate will

17   significantly burden and chill speech on covered media by converting positive advertisements

18   into hostile attacks on Plaintiffs' products.  Indeed, the City concedes that the Warning's text,

19   design, size, format, and "WARNING" signal will divert consumer attention from the balance of

20   an advertisement, undermine consumers' perception of the advertised product, and discourage its

21   consumption.  Opp. 5 (citing Hammond Rep. ¶¶ 36-39); *see* Hammond Rep. ¶¶ 16-33; Golder

22   Reb. Rep. ¶¶ 14-15, 26-27, 40.  Dr. Hammond's report supports Plaintiffs' belief—and Professor

23   Golder's conclusion—that the Mandate would make speaking on covered media so intolerable

24   and counterproductive to Plaintiffs' messages that it will inhibit them from speaking on covered

25   media.  Mot. 15-18; Golder Rep. ¶¶ 42, 49-53, 67-68; Golder Reb. Rep. ¶¶ 18-19.[8]  The City

---

[8] The City directly (if unintentionally) supports Plaintiffs' position that counterspeech would be
27   infeasible here when it protests that making its own Warning more descriptive is infeasible
     because it "would replace the warning with an essay."  Opp. 16, 20; *see also* Hammond Rep.
28   ¶ 29 (admitting that "long warnings … are associated with lower levels of readability and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1   even describes Plaintiffs' expected "shift away from the kind of advertising that is covered by

2   [the Warning Mandate]" as "rational."  Opp. 14 n.11.

3          The City argues that such practical concerns are irrelevant because compelled speech is

4   unduly burdensome only if it makes advertisement impossible.  *See id.* at 14.  If that were true,

5   government officials would have virtually unbridled power to suppress advertising of products

6   they find personally or politically objectionable.  That is not the law.  *See, e.g.*, *Tillman v. Miller*,

7   133 F.3d 1402, 1403-04 & n.4 (11th Cir. 1998) (per curiam) (striking down as unduly

8   burdensome requirement that advertiser dedicate 5 out of 30-second television message—less

9   than 20%—to compelled disclosure).   The undue burden inquiry requires a real-world

10  assessment of the impact of regulation, not just whether the regulation completely precludes

11  speech.  *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (finding "chill[ing]" when "deter[ring]"

12  effect leads those regulated to "choose simply to abstain from protected speech").

13         The City also argues that the Warning Mandate's suppression of protected speech on

14  covered media is legally insignificant because Plaintiffs remain free to advertise unencumbered

15  on different media.  Opp. 14.  But the City itself acknowledges the "many benefits to outdoor

16  advertising not offered by other forms of media."  *Id.* at 14 n.11.  And the First Amendment does

17  not permit the government to exclude expression from one public forum "on the plea that it may

18  be exercised in some other place."  *Reno v. ACLU*, 521 U.S. 844, 880 (1997) (citation omitted).

19  The City's argument, moreover, is unresponsive to the particular injury such a result would

20  impose on CSOAA's members.  *See* Mot. 17 n.10.

21         The City deems Plaintiffs' argument "foreclose[d]" by two out-of-circuit cases that found

22  similarly-sized tobacco warnings not to be unduly burdensome.  *See* Opp. 15.  Those cases have

23  no binding effect here and offer the City no support.  *Consol. Cigar Corp. v. Reilly* found no

24  undue burden only because, unlike here, the companies "offer[ed] precious little to support" their

25  claim that they would cease advertising.  218 F.3d 30, 55 (1st Cir. 2000).  *Discount Tobacco City*

26  *& Lottery, Inc. v. United States*, meanwhile, erroneously declined to "separately analyze whether

27

28  understanding"); Opp. 20 ("[W]arnings on advertisements or packages must be concise to be
    effective ….").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1   the warnings [were] unduly burdensome," 674 F.3d 509, 567 (6th Cir. 2012), something that

2   cannot be squared with *Ibanez v. Florida Department of Business & Professional Regulation*,

3   512 U.S. 136, 146 (1994) (separately analyzing whether disclosure imposed undue burden).

4        In any event, the City overlooks that what burden is "undue" in the context of warnings

5   for tobacco products (which cannot be safely used in moderation, are addictive, uniquely and

6   inherently increase every user's risk of death, and implicate hidden hazards) is not the same as

7   what burden is undue in the context of warnings for sugar-sweetened beverages (which can

8   "safely be consumed in moderation," Opp. 9, do not uniquely or inherently contribute to obesity

9   or diabetes, and already carry product labels fully disclosing the caloric contribution about which

10  the City purports to be warning).  Particularly if this Court credits the City's argument that the

11  Warning conveys merely the health risks of consuming excess calories generally, the burden

12  imposed solely on speech about sugar-sweetened beverages is not justifiable.  While courts will

13  generally approve a compelled disclosure "designed to cure confusing, incomplete or misleading

14  facts contained elsewhere in the advertisement," *Tillman v. Miller*, No. 1:95-CV-1594-CC, 1996

15  WL 767477, at * 5 (N.D. Ga. Sept. 30, 1996), *aff'd*, 133 F.3d 1402 (11th Cir. 1998) (per curiam),

16  courts are far more skeptical when government compels a "plaintiff to carry piggyback for free

17  on the advertisement for which he pays [a warning that] is not tied to an *inherent* quality of the

18  thing he is trying to sell." *Tillman*, 133 F.3d at 1403 (emphasis added).  *Compare id.*, *with* Opp.

19  11 (stating Warning does not claim beverages with added sugar are "inherently dangerous").

20  Just as a government concerned with auto safety generally could not require only Toyota ads to

21  warn consumers that "Driving Toyotas contributes to accidents," the City, concerned about

22  excessive calorie consumption, cannot impose a warning solely on ads for Plaintiffs' products.

23       At minimum, if this Court credits the City's claim that its Warning does not convey any

24  risk of obesity or diabetes from sugar-sweetened beverages "beyond their caloric contribution,"

25  Opp. 9, the Warning's statutory application to all sugar-sweetened beverages with as few as 25

26  calories is not sustainable.  As the City itself recognizes, "it is neither necessary nor appropriate

27  for consumer product warnings to address risk factors not specific to that product."  *Id.* at 20.

28  Yet the Warning Mandate covers dozens of Plaintiffs' products that the FDA itself considers

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

"low calorie," Mot. 14 n.8 (citing 21 C.F.R. § 101.60(b)(2)(i)(A)), as well as sweetened fruit juices, vitamin waters, and numerous other beverages with low consumption rates.

## 2. The Warning Mandate Cannot Survive Heightened Scrutiny

Because it is too underinclusive to materially advance the City's interest,[9] and the City has obvious, less restrictive alternatives, the Warning Mandate cannot survive the "more exacting form of *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980)] review" now applicable to commercial speech regulations in this circuit. *CTIA – The Wireless Ass'n v. City of Berkeley*, No. 15-cv-2529-EMC, 2016 WL 324283, at *2-3 (N.D. Cal. Jan. 27, 2016) (discussing *Retail Digital Network*).

### a. The Warning Mandate Does Not Directly and Materially Advance The City's Interest

With its broad exemption of all newspapers, magazines, periodicals, circulars, publications, television, radio, and internet or electronic media, the City does not contest that the Warning Mandate excepts the "lion's share" of advertising in San Francisco. Opp. 18. The City insists, however, that its limited coverage will "not undermine the City's interest in enacting the Ordinance," because "the warning will still appear on signs throughout the City." *Id.* That mere assertion is insufficient. Rather, the City must demonstrate the effectiveness of its advertising regulations. *See Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 437 (9th Cir. 1993).

As Dr. Hammond notes, "[f]or communications to be effective, messages must reach their target audiences." Hammond Rep. ¶ 31. The Ordinance's myriad exceptions will largely prevent that from happening. The City not only has exempted the vast majority of advertising reaching San Franciscans, but the Warning will (the City recognizes) lead "rational" advertisers to "shift away from the kind of advertising that is covered." Opp. 14 n.11. And many of the examples on which the City relies are signs "permitted by the City on or before October 20,

---

[9] *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656 (2015), did not purport to change the law. *See* Opp. 18. It reaffirms that, while the First Amendment does not impose a *freestanding* underinclusiveness limitation, a law's underinclusiveness is relevant to whether the government's interest is sufficient and its regulation directly and materially advances that interest. *See Williams-Yulee*, 135 S. Ct. at 1668.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1   2015," and thus exempt from the Warning Mandate by S.F. Health Code § 4203(d).   If the

2   Warning Mandate takes effect, the City's few remaining examples are likely to disappear as

3   Plaintiffs exit covered media.  *See, e.g.*, Declaration of James Fox ¶ 29, ECF No. 50-18 (noting

4   cost of changing vending machine signage if Warning is required); Declaration of Steve Kelly

5   ¶ 31, ECF No. 50-11 (same); Declaration of Matt Johnson ¶ 32, ECF No. 50-5 (same).

6        The facts of this case are therefore almost the opposite of those in *Metromedia, Inc. v.*

7   *City of San Diego*, 453 U.S. 490 (1981), or *Metro Lights L.L.C. v. City of Los Angeles*, 551 F.3d

8   898 (9th Cir. 2009), where nearly all of the targeted advertising fell *within* the scope of the

9   regulation.  Here, by contrast, the exceptions dominate the rule, rendering any advancement of

10  the government's interest incidental.  *See Cal-Almond*, 14 F.3d at 438.  Many of the Warning's

11  exemptions, moreover—such as exceptions at the point of sale for menus, retail shelf tags,

12  beverage containers, and packaging—directly undercut the City's stated purpose to "inform the

13  public of the presence of added sugars … before purchases."  S.F. Health Code § 4201.  Unlike

14  in *Metro Lights*, these exceptions *do* "work at inexorable cross-purposes" with the City's stated

15  objectives.  Opp. 19 (quoting *Metro Lights*, 551 F.3d at 911).

16       The City protests that it chose to exempt most media to avoid potential litigation costs, or

17  for "technological, logistical, or economic" reasons.  *See id*. at 17.  Those justifications have

18  nothing to do with advancing public health.  To the contrary, the City essentially admits the

19  exemptions will diminish the effectiveness its regulation.  *Id*. at 18.  This also is fatal to its case.

20  The Ninth Circuit has made clear that "exceptions that make distinctions among different kinds

21  of speech *must* relate to the interest the government seeks to advance."  *Metro Lights*, 551 F.3d at

22  906 (emphasis added).  Having exempted most speech about beverages with added sugar for

23  reasons unrelated to health, the Mandate would have failed even before *Retail Digital Network*,

24  let alone under the more exacting form of scrutiny *Retail Digital Network* demands.

25       The City fails equally to justify its exclusion of all other foods and beverages from the

26  Mandate.  It insists that beverages with added sugar "are the largest source of added sugar in

27  American diets."  Opp. 18.  But that claim is misleading, because it works only by aggregating

28  all beverages with added sugar and disaggregating into sub-categories all sugar-sweetened foods.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

By the City's own estimate, sugar-sweetened foods account for 60% of added sugar consumption. *See* Willett Rep. ¶ 18. Regardless, given the City's stated purpose to "inform the public of the presence of added sugars," S.F. Health Code § 4201, its choice to exempt all sugar-sweetened food and even some beverages with up to "40 grams of total sugar," while including beverages with as few as 25 calories, suggests the City may be burdening the speech only of the politically disfavored. *See Williams-Yulee*, 135 S. Ct. at 1668.

### b. The Warning Mandate Is More Extensive Than Necessary

The City also cannot overcome its "demanding" burden to establish that the Mandate does not burden substantially more speech than is necessary, given the obvious alternative available to the City: delivering its opinions itself. *Retail Digital Network*, 810 F.3d at 649.[10] The City complains that forcing Plaintiffs to carry its hostile message about their products is cheaper than paying for its own speech. *See* Opp. 21 (citing Hammond Rep. ¶¶ 31-33). Presumably so, but the "First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 795 (1988). While the government is free to share its own views, it is not entitled to transfer the costs of its speech to others.

The City also warns that Plaintiffs' position makes it difficult to uphold disclosures under *Central Hudson.* Opp. 20. That depends on the disclosure. Plaintiffs certainly believe that the government may not compel a party to burden its speech with the government's hostile opinions on robustly debated questions of science. But that is not just Plaintiffs' position. It is the law.

### B. The Mandate Is Unconstitutional As Applied To Noncommercial Speech

To the extent the Warning Mandate reaches beyond commercial speech, the City does not

---

[10] This is the most glaring problem, but nothing about the Warning Mandate is "narrowly tailored" to advance the City's asserted health interest. *Retail Digital Network*, 810 F.3d at 649 (citation omitted). As noted, it applies to ads even of "low-calorie" beverages. According to the City, Opp. 21-23, it applies to *all* speech by Plaintiffs (*on any topic*) if the message is identified as Plaintiffs' speech by use of their names or brand logos. And in contrast to Plaintiffs' existing product labels, which provide consumers highly visible and explicit information about calories and sugars, Answer ¶ 30, ECF No. 37, the Warning provides consumers no data about the *amount* of added sugars in a given product, nor any guidance permitting consumers to make an "informed choice" about the implications of that amount. S.F. Health Code § 4201. The poor fit between means and ends in this case is striking.

1    appear to dispute that those applications are subject to strict scrutiny and invalid.  Mot. 7-9; Opp.

2    21-23.  The City admits, moreover, that Plaintiffs' speech on cultural, social, or health issues

3    falls outside the "core notion of commercial speech," Opp. 21 (citation omitted).  But the City

4    argues that such speech nonetheless qualifies as commercial under *Bolger v. Youngs Drug Prods.*

5    *Corp.*, 463 U.S. 60, 66 (1983), which held that an ad generally will be found commercial when it

6    "refers to a specific product" and the speaker acted "*substantially* out of economic motivation."

7    *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 552-53 (5th Cir. 2001).[11]  By labeling

8    Plaintiffs' speech as commercial, the City stretches *Bolger* beyond its limits.

9         Under *Bolger*, the speaker's motivation frequently is "determinative."  *Transp.*

10   *Alternatives, Inc. v. City of New York*, 218 F. Supp. 2d 423, 437 n.24 (S.D.N.Y. 2002), *aff'd*, 340

11   F.3d 72 (2d Cir. 2003).  The City claims all of Plaintiffs' cited advertisements on every subject

12   serve an "unmistakable commercial function: enhancing the [advertiser's] brand in the minds of

13   consumers."  Opp. 22 (quoting *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 518 (7th Cir.

14   2014)).  But the City is far too quick to dismiss as "economic[ally] motivat[ed]" speech about

15   what even the City characterizes as Plaintiffs' "*altruistic* endeavors," *id.* (emphasis added).  As

16   *Jordan* recognized, "there is a world of difference" between an advertisement connecting a

17   corporate logo and slogan to a famous local athlete well known for endorsing products and "an

18   ad congratulating a local community group."  743 F.3d at 518.  The latter is not substantially

19   economically motivated.  *Id.*; *see also Transp. Alternatives, Inc.*, 218 F. Supp. 2d at 437 n.25 ("If

20   the corporations' marks were *not* used in return for financial or material support … that use

21   would constitute non-commercial speech." (emphasis added)).  The speech at issue here is of the

22   same ilk.  Advertisements that celebrate marriage equality, following the successful resolution of

23   a Supreme Court case in which the speaker was an amicus, or which promote recycling or social

24   enterprise, or celebrate scholarship winners, are not commercial in nature.

25   _____

26   [11] The City asserts that Plaintiffs concede their examples to be advertisements.  Opp. 22.  To the
     contrary, Plaintiffs merely recognize that the City plans to *treat* as an "advertisement" all speech
27   that "identifies … a Sugar-Sweetened beverage for sale or use," including by use of the "logo" of
     that product or its producer.  S.F. Health Code § 4202.  As its opposition makes clear, the City
28   intends to impose its Warning on every example of speech Plaintiffs identified, properly or not.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1   The City ultimately concedes that "some of [Plaintiffs'] exemplar ads … include

2 noncommercial speech."   Opp. 23.   But, according to the City, even these "altruistic"

3 advertisements must be deemed commercial because they include the speaker's name or logo.

4 Contrary to the City's understanding, core noncommercial speech is not rendered commercial

5 (and thus less worthy of protection) by terms signaling the *speaker's* support for the cause or

6 community event.  *See, e.g.*, *Transp. Alternatives, Inc.*, 218 F. Supp. 2d at 437 n.25.  *Bolger* is

7 clear that the fact a corporation's speech is *economically motivated*, standing alone, is "clearly

8 insufficient" to render it automatically commercial speech.  463 U.S. at 67.

9   The City finally argues that, even if the Warning Mandate reaches some noncommercial

10 speech, it does not reach enough to justify a facial injunction.  But whether a law punishes a

11 "substantial" amount of protected speech is "judged in relation to the statute's plainly legitimate

12 sweep."  *Hicks*, 539 U.S. at 118-19 (citation omitted).  The Warning Mandate has no *plainly*

13 legitimate sweep, and Plaintiffs have identified numerous real world examples where it will

14 burden (and in practice suppress) core noncommercial speech.

15 **II.  THE OTHER FACTORS SUPPORT AN INJUNCTION**

16   The City's arguments on the other injunction factors largely piggyback on its view that

17 Plaintiffs' First Amendment claim is "tenuous."  Opp. 23.  To the extent this Court disagrees,

18 Plaintiffs offer no substantial reason why an injunction should not issue.  The City does not

19 dispute that Plaintiffs will have established irreparable injury as a matter of law.  *See Elrod v.*

20 *Burns*, 427 U.S. 347, 373 (1976); Opp. 23.  And the City does not even try to rebut the particular

21 irreparable harm CSOAA's members will suffer if the Mandate is not enjoined.  Mot. 24.

22   The City claims that an injunction will disrupt its public interest in communicating health

23 information.  Not so.  First, the City would remain free to communicate any health opinions it

24 chooses.  Opp. 24.  Second, because Plaintiffs would exit speech on media covered by the

25 Warning Mandate rather than convey the City's message, the Warning Mandate's enforcement

26 during the pendency of this litigation would do little to advance the City's purported interest.

27          **CONCLUSION**

28   For the forgoing reasons, the motion for a preliminary injunction should be granted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:15-cv-03415-EMC

1

2   Dated:  March 15, 2016                    Respectfully submitted,

3                                             LATHAM & WATKINS LLP

4

5                                             By  /s/ James K. Lynch
                                              James K. Lynch (CA Bar No. 178600)
6                                             Marcy C. Priedeman (CA Bar No. 258505)
                                              LATHAM & WATKINS LLP
7                                             505 Montgomery Street
                                              Suite 2000
8                                             San Francisco, CA 94111-6538
                                              T +1.415.391.0600
9                                             F +1.415.395.8095
                                              jim.lynch@lw.com

10                                            Richard P. Bress (Admitted *Pro Hac Vice*)
                                              Michael E. Bern (Admitted *Pro Hac Vice*)
11                                            LATHAM & WATKINS LLP
                                              555 Eleventh Street, NW
12                                            Suite 1000
                                              Washington, DC 20004-1304
13                                            Direct Dial: +1.202.637.1022
                                              Fax: +1.202.637.2201
14                                            rick.bress@lw.com

15                                            *Attorneys for Plaintiff*
                                              The American Beverage Association
16

17                                            By  /s/ Theodore B. Olson
                                              Theodore B. Olson (CA Bar No. 38137)
18                                            Andrew S. Tulumello (CA Bar No. 196484)
                                              Helgi C. Walker (Admitted *Pro Hac Vice*)
19                                            Jacob T. Spencer (Admitted *Pro Hac Vice*)
                                              GIBSON, DUNN & CRUTCHER LLP
20                                            1050 Connecticut Avenue, NW
                                              Washington, DC 20036-5306
21                                            T +1.202.955.8668
                                              F +1.202.530.9575
22                                            TOlson@gibsondunn.com

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

1     Charles J. Stevens (CA Bar No. 106981)
      Joshua D. Dick (CA Bar No. 268853)
2     GIBSON, DUNN & CRUTCHER LLP
      555 Mission Street
3     San Francisco, CA 94105-0921
      Direct Dial: +1.415.393.8233
4     Fax: +1.415.374.8469
      CStevens@gibsondunn.com
5
      *Attorneys for Plaintiff*
6     California State Outdoor Advertising
      Association
7
8     By  /s/ Thomas S. Knox
      Thomas S. Knox (CA Bar No. 73384)
9     KNOX, LEMMON & ANAPOLSKY, LLP
      300 Capitol Mall, Suite 1125
10    Sacramento, CA 95814
      Direct Dial: +1.916.498.9911
11    Fax: +1.916.498.9991
      CStevens@gibsondunn.com
12
      *Attorneys for Plaintiff*
13    California Retailers Association

14

15              **ATTESTATION OF CONCURRENCE IN THE FILING**

16

17         Pursuant to Civil Local Rule No. 5-1(i)(3), I declare that the concurrence has been

18    obtained from each of the above signatories to file this document with the Court.

19

20              /s/ James K. Lynch
                James K. Lynch

21

22

23

24

25

26

27

28

17