1

LATHAM & WATKINS LLP
  Steven M. Bauer (CA Bar No. 135067)
    steven.bauer@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

2

3

4

5

LATHAM & WATKINS LLP
  Richard P. Bress (Admitted *Pro Hac Vice*)
    rick.bress@lw.com
  Michael E. Bern (Admitted *Pro Hac Vice*)
    michael.bern@lw.com
  George C. Chipev (Admitted *Pro Hac Vice*)
    george.chipev@lw.com
  Caroline A. Flynn (CA Bar No. 296691)
    caroline.flynn@lw.com
  Shannon Grammel (Admitted *Pro Hac Vice*)
    shannon.grammel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

6

7

8

9

10

11

12

13

*Attorneys for Plaintiffs*
American Beverage Association and California
Retailers Association

14

15

*Additional Counsel on Signature Page*

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

SAN FRANCISCO DIVISION

19

20

21

22

23

24

25

26

27

28

AMERICAN BEVERAGE ASSOCIATION,
CALIFORNIA RETAILERS
ASSOCIATION, AND CALIFORNIA
STATE OUTDOOR ADVERTISING
ASSOCIATION,

                    Plaintiffs,

            v.

CITY AND COUNTY OF SAN
FRANCISCO,

                    Defendant.

Civil Action No. 3:15-cv-03415-EMC

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT**

Date:  May 20, 2021
Time: 1:30 p.m.
Judge: Hon. Edward M. Chen
Courtroom: Courtroom 5, 17th floor

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

NOTICE OF MOTION ........................................................................................................... 1

RELIEF SOUGHT .................................................................................................................. 1

INTRODUCTION ................................................................................................................... 1

STATEMENT OF CASE ........................................................................................................ 4

    A.    The City Enacts The Original Ordinance ............................................................. 4

    B.    The Ninth Circuit Holds That The Original Ordinance Likely Violated The First Amendment ............................................................................................... 5

    C.    The City Enacts The Amended Ordinance .......................................................... 7

    D.    The Messages The Amended Warning Will Convey To Consumers ................... 9

    E.    The Amended Ordinance's Effects On Plaintiffs' Speech ................................. 12

LEGAL STANDARD ........................................................................................................... 15

ARGUMENT ......................................................................................................................... 15

I.    THE AMENDED ORDINANCE IS NOT ELIGIBLE FOR *ZAUDERER* REVIEW ...................................................................................................................... 16

    A.    The Amended Warning Will Send The False, Misleading, And At Minimum Controversial Message That Drinking Sugar-Sweetened Beverages Can Cause Weight Gain And Is Inherently Hazardous ................... 17

    B.    The Amended Warning Will Send The False, Misleading, And At Minimum Controversial Message That Sugar-Sweetened Beverages Are More Likely Than Other Caloric Foods And Beverages To Cause Weight Gain ..................................................................................................................... 22

    C.    The City's Arguments In Support Of The Amended Warning Fail ................... 24

II.    THE AMENDED ORDINANCE FAILS INTERMEDIATE SCRUTINY ...................... 27

    A.    The City Cannot Prove That The Amended Ordinance Would Directly And Materially Advance A Substantial Government Interest ............................ 27

    B.    The City Cannot Prove That The Amended Ordinance Is Narrowly Tailored ............................................................................................................... 30

**Page**

III.   ALTERNATIVELY, THE AMENDED ORDINANCE FAILS UNDER
      *ZAUDERER* ...................................................................................................32

      A.   The City Cannot Prove That The Amended Ordinance Will Not Impose
           Undue Burdens On Speech...........................................................................32

      B.   The City Cannot Prove That These Burdens Are Justified ................................33

IV.   PLAINTIFFS ARE ENTITLED TO THEIR REQUESTED RELIEF ..............................35

CONCLUSION.........................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Beverage Ass'n v. City & County of San Francisco* (*ABA I*),
187 F. Supp. 3d 1123 (N.D. Cal. 2016) ........................................................ *passim*

*American Beverage Ass'n v. City & County of San Francisco* (*ABA II*),
871 F.3d 884 (9th Cir. 2017), *reh'g granted*, 880 F.3d 1019 (9th Cir. 2018),
*reh'g en banc*, 916 F.3d 749 (9th Cir. 2019) ................................................ *passim*

*American Beverage Ass'n v. City & County of San Francisco* (*ABA III*),
916 F.3d 749 (9th Cir. 2019) ........................................................................ *passim*

*American Beverage Ass'n v. City & County of San Francisco*,
No. 15-cv-03415-EMC, 2016 WL 9184999 (N.D. Cal. June 7, 2016).....................5

*American Meat Institute v. United States Department of Agriculture* (*AMI*),
760 F.3d 18 (D.C. Cir. 2014)..................................................................... 16, 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................15

*Associated Press v. Otter*,
682 F.3d 821 (9th Cir. 2012) .........................................................................35

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
447 U.S. 557 (1980).................................................................................. 4, 30

*Community House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) .......................................................................35

*CTIA – The Wireless Ass'n v. City of Berkeley*,
928 F.3d 832 (9th Cir.), *cert. denied*, 140 S. Ct. 658 (2019).......................... 16, 27

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014)..........................................................................35

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)......................................................................................35

*ECM BioFilms, Inc. v. FTC*,
851 F.3d 599 (6th Cir. 2017) .........................................................................21

*Entertainment Software Ass'n v. Blagojevich*,
469 F.3d 641 (7th Cir. 2006) ..................................................................... 30, 31

*Evergreen Ass'n, Inc. v. City of New York*,
740 F.3d 233 (2d Cir. 2014)...........................................................................30

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLAINTIFFS' MOT. FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-03415-EMC

**Page(s)**

*FTC v. John Beck Amazing Profits, LLC,*
  865 F. Supp. 2d 1052 (C.D. Cal. 2012) ................................................................................21

*Italian Colors Restaurant v. Becerra,*
  878 F.3d 1165 (9th Cir. 2018) ......................................................................................16, 28

*Janus v. American Federation of State, City & Municipal Employees, Council 31,*
  138 S. Ct. 2448 (2018) ..........................................................................................................15

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ...............................................................................................................15

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
  559 U.S. 229 (2010) ...............................................................................................................17

*National Ass'n of Manufacturers v. SEC (NAM),*
  800 F.3d 518 (D.C. Cir. 2015) ........................................................................................28, 33

*National Ass'n of Wheat Growers v. Becerra,*
  468 F. Supp. 3d 1247 (E.D. Cal. 2020) ...............................................................................17

*National Institute of Family & Life Advocates v. Becerra (NIFLA),*
  138 S. Ct. 2361 (2018) .................................................................................................. *passim*

*Nicopure Labs, LLC v. FDA,*
  944 F.3d 267 (D.C. Cir. 2019) .............................................................................................21

*Nigro v. Sears, Roebuck & Co.,*
  784 F.3d 495 (9th Cir. 2015) ...............................................................................................29

*POM Wonderful, LLC v. FTC,*
  777 F.3d 478 (D.C. Cir. 2015) .............................................................................................21

*R.J. Reynolds Tobacco Co. v. FDA,*
  696 F.3d 1205 (D.C. Cir. 2012), *overruled in part on other grounds sub nom.*
  *American Meat Institute v. United States Department of Agriculture*, 760 F.3d
  18 (D.C. Cir. 2014) ................................................................................................................16

*Southland Sod Farms v. Stover Seed Co.,*
  108 F.3d 1134 (9th Cir. 1997) .............................................................................................21

*Tillman v. Miller,*
  133 F.3d 1402 (11th Cir. 1998) ...........................................................................................34

*United States v. Pepe,*
  895 F.3d 679 (9th Cir. 2018) ...............................................................................................17

*Valle Del Sol Inc. v. Whiting,*
  709 F.3d 808 (9th Cir. 2013) ...............................................................................................30

**Page(s)**

*Valley Broadcasting Co. v. United States*,
   107 F.3d 1328 (9th Cir. 1997) ...............................................................................28

*Video Software Dealers Ass'n v. Schwarzenegger*,
   556 F.3d 950 (9th Cir. 2008) .................................................................................28

*William H. Morris Co. v. Group W, Inc.*,
   66 F.3d 255 (9th Cir. 1995) ...................................................................................21

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985).................................................................2, 16, 17, 25, 35

**STATUTES**

28 U.S.C. § 2201(a) ........................................................................................................35

S.F. Health Code §§ 4201-4204......................................................................................1

S.F. Health Code § 4201 ...........................................................................11, 23, 28, 31, 32

S.F. Health Code § 4202 ......................................................................................7, 8, 28

S.F. Health Code § 4203 ............................................................................................2, 5

S.F. Health Code § 4203(a).............................................................................7, 8, 9, 17

S.F. Health Code § 4203(b) .....................................................................................7, 8

S.F. Ordinance No. 26-20, https://sfgov.legistar.com/View.ashx?M=F&ID=
   8078165&GUID=AA264DC0-645D-4F27-BFE0-C4160BB20F81 ....................1, 7

S.F. Ordinance No. 100-15, https://www.sfbos.org/ftp/uploadedfiles/
   bdsupvrs/ordinances15/o0100-15.pdf...............................................................2, 5, 32

**OTHER AUTHORITIES**

ABA, *Clear on Calories: The Calorie Label Initiative and Style Guide* (2010),
   http://members.ameribev.org/files/toolkits/final-aba-clear-on-calories--calorie-
   label-initiat.pdf......................................................................................................31

21 C.F.R. § 184.1 ...........................................................................................................18

21 C.F.R. § 184.1866 .....................................................................................................18

City & County of San Francisco, SFGov TV, Board of Supervisors: Health
   Code—Sugar-Sweetened Beverage Warning for Advertisements at 29:18
   (June 9, 2015), http://sanfrancisco.granicus.com/MediaPlayer.php?view_id=
   10&clip_id=23003 ...................................................................................................5

**Page(s)**

City & County of San Francisco, *Sugary Drinks Distributor Tax Advisory Committee August 2019 Data Report* (2019), https://www.sfdph.org/dph/files/SDDTAC/Sugary%20Drinks%20Distributor%20Tax%202019%20Data%20Report%20Final.pdf.............................................................34

Victoria Colliver, *United front in S.F.'s war on sodas, other sweet drinks*, SFGate (Feb. 2, 2014), https://www.sfgate.com/health/ article/United-front-in-S-F-s-war-on-sodas-other-sweet-5196702.php.......................................................5

FDA, Changes to the Nutrition Facts Label, https://www.fda.gov/food/food-labeling-nutrition/changes-nutrition-facts-label (Jan. 4, 2021) .........................................11, 19

Fed. R. Civ. P. 56(a) ...........................................................................................................15

79 Fed. Reg. 11,880 (Mar. 3, 2014)................................................................1, 12, 18, 23

81 Fed. Reg. 33,742 (May 27, 2016) ....................................................................... *passim*

83 Fed. Reg. 19,619 (May 4, 2018) .....................................................................................31

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (3d ed. 1992) ................................................................................................................................21

U.S. Dep't of Health and Human Services & U.S. Dep't of Agriculture, *2015-2020 Dietary Guidelines for Americans* (Dec. 2015), https://health.gov/sites/default/files/2019-09/2015-2020_Dietary_Guidelines.pdf.........................................9, 17, 25

U.S. Dep't of Health and Human Services & U.S. Dep't of Agriculture, *2020-2025 Dietary Guidelines for Americans* (Dec. 2020), https://www.dietaryguidelines.gov/sites/default/ files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf ........................................2, 25, 26, 34

1

## NOTICE OF MOTION

2      PLEASE TAKE NOTICE that on May 20, 2021, at 1:30 p.m., in Courtroom 5 of the United

3  States District Court, located at 450 Golden Gate Avenue in San Francisco, CA, Plaintiffs

4  American Beverage Association ("ABA"), California Retailers Association ("CRA"), and

5  California State Outdoor Advertising Association ("CSOAA") will bring for hearing this motion

6  for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

7

## RELIEF SOUGHT

8      Plaintiffs seek an order entering judgment in their favor on their claim and (1) declaring

9  that Ordinance No. 26-20 enacted by the City and County of San Francisco (the "City") on

10  February 14, 2020 (codified at S.F. Health Code §§ 4201-4204) violates the First Amendment to

11  the U.S. Constitution, and (2) enjoining the City and any of its officers, employees, or agents from

12  enforcing or threatening to enforce the ordinance against Plaintiffs, Plaintiffs' members, or any

13  other entity advertising Plaintiffs' members' products.

14

## INTRODUCTION

15      The government cannot lawfully compel a private company to make false or misleading

16  statements about its products as the price for advertising them.  Yet San Francisco is still

17  attempting to do just that.  In this latest offensive in its self-proclaimed "War On Big Soda," the

18  City is once again requiring advertisements for sugar-sweetened beverages to include an alarming,

19  black-box warning—of a kind normally reserved for tobacco and alcohol—this time cautioning

20  consumers that "drinking" sugar-sweetened beverages "can cause" weight gain and eventually

21  obesity and type 2 diabetes.  The City's speech regulation targets *only* sugar-sweetened beverages

22  for its warning, even though the FDA has concluded that "added sugars, including sugar-sweetened

23  beverages, are no more likely to cause weight gain in adults than any other source of energy";[1]

24  even though the FDA has *rejected* a product warning linking added sugars to obesity and type 2

25  diabetes as "not consistent with [its] review of the evidence";[2] and even though sugar-sweetened

26

27

---

[1] 79 Fed. Reg. 11,880, 11,904 (Mar. 3, 2014).
[2] 81 Fed. Reg. 33,742, 33,829 (May 27, 2016).

28

beverages account for only a roughly 3% share of Americans' daily caloric intake.[3]  The City can use its own soapbox to share its opinions about diet and nutrition with San Francisco residents. But compelling Plaintiffs to burden their speech with the City's unfounded and controversial message violates the First Amendment.

In 2016, Plaintiffs moved to preliminarily enjoin the City's earlier attempt to compel sugar-sweetened beverage manufacturers to display a large, black-box warning on their ads stating that "[d]rinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay." S.F. Ordinance No. 100-15 (adding S.F. Health Code § 4203) (the "Original Warning").  Although this Court deemed it a close question whether the Original Warning unduly burdened Plaintiffs' lawful speech—and for that reason enjoined the ordinance's enforcement pending appeal—it denied a preliminary injunction.  *Am. Beverage Ass'n v. City & Cnty. of San Francisco (ABA I)*, 187 F. Supp. 3d 1123 (N.D. Cal. 2016).  A panel of the Ninth Circuit reversed.  *See Am. Beverage Ass'n v. City & Cnty. of San Francisco* (*ABA II*), 871 F.3d 884 (9th Cir. 2017), *reh'g granted*, 880 F.3d 1019 (9th Cir. 2018), *reh'g en banc*, 916 F.3d 749 (9th Cir. 2019).  The panel held that—far from educating San Franciscans about straightforward nutritional facts—the Original Warning conveyed "'misleading'" and "controversial" messages out of step with scientific consensus, including the conclusions of the FDA.  *Id.* at 895 (citation omitted).  For that reason, the panel held that the Original Warning likely could not be upheld under *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985).  The panel additionally held that forcing Plaintiffs to display the Original Warning would "unduly burden[] and chill[]" their protected speech.  *Id.* at 897.  After granting rehearing, the en banc Ninth Circuit agreed that the ordinance likely was unconstitutional, based on its determination that the Original Warning's overwhelming size and "contrasting rectangular border" imposed an undue burden.  *Am. Beverage Ass'n v. City & Cnty. of San Francisco* (*ABA III*), 916 F.3d 749, 756-57 (9th Cir. 2019) (en banc).  Because it had no need to, the majority opinion did not address whether the warning was purely factual and uncontroversial.

Following its en banc loss at the Ninth Circuit, the City amended the ordinance to decrease

---

[3] U.S. Dep't of Health and Human Services & U.S. Dep't of Agriculture, *2020-2025 Dietary Guidelines for Americans* 42-43 (Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf ("*2020 Dietary Guidelines*").

the size of the required warning from 20% to 10% of the ad, while retaining its border and other visually alarming design elements.  The City also changed the warning's language.  As scaled to 10% of this page, the new "Amended Warning" will state:

> **SAN FRANCISCO GOVERNMENT WARNING:**  Drinking beverages with added sugar(s) can cause weight gain, which increases the risk of obesity and type 2 diabetes.

But the City's textual revisions exacerbate the Original Warning's constitutional flaws. The Amended Warning will tell San Francisco consumers that "drinking" beverages with added sugar "can cause" weight gain and lead to obesity and type 2 diabetes, even though the FDA has found that the scientific evidence "*do[es] not support a cause and effect relationship* between added sugars consumption and risk of obesity." 81 Fed. Reg. at 33,760 (emphasis added).  The Amended Warning also will continue to imply that drinking these beverages is inherently hazardous and more likely to cause weight gain than consuming other equally (or even more) caloric foods and beverages—even though the City's own expert has acknowledged that "a calorie is a calorie," and that foods and drinks with similar amounts of calories will therefore "have similar effects on your weight."[4]  There can be no legitimate dispute that the Amended Warning will communicate these misleading and controversial messages to reasonable consumers.  These are the very messages the City intends to convey.  They are messages that two of three members of the original Ninth Circuit panel understood the Original Warning to convey.  And Plaintiffs' unrebutted consumer survey evidence now confirms that these are the messages that a substantial portion of consumers will take away from the Amended Warning.

For these reasons, the City cannot meet its burden to prove that the Amended Warning will convey only "purely factual" and "uncontroversial" information, and it is therefore not eligible for *Zauderer* review.  *See Nat'l Inst. of Family & Life Advocates v. Becerra* (*NIFLA*), 138 S. Ct. 2361,

---

[4] Walter C. Willett, *Eat, Drink, and Be Healthy: The Harvard Medical School Guide to Healthy Eating* 44 (2001) (Bress Decl. Ex. P).

2372 (2018) (citation omitted) (emphasizing that a disclosure must meet both conditions).  The Amended Ordinance, accordingly, is subject to intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  Under that standard, the City must prove both that the law will materially advance a substantial government interest and that it is narrowly tailored to meet that objective, and the City cannot prove either.  Among other serious problems with the ordinance, it is destined to be ineffective:  Because displaying the Amended Warning would substantially undermine the effectiveness of Plaintiffs' ads, the undisputed record shows that manufacturers will cease advertising sugar-sweetened beverages on the limited media subject to the warning requirement if the ordinance goes into effect.

Even if this Court were to determine that the Amended Ordinance qualifies for the *Zauderer* standard of review, it would flunk that test as well.  The Supreme Court has made clear that compelled-disclosure laws can survive under *Zauderer* only if the government proves that the laws are "neither unjustified nor unduly burdensome."  *NIFLA*, 138 S. Ct. at 2377.  Because few (if any) consumers would ever see the City's message, the Amended Ordinance's only meaningful effect will be to chill Plaintiffs' lawful speech on covered media.  In addition, the City's decision to single out only *one* caloric product—sugar-sweetened beverages—for a black-box warning about the effect of calories on weight gain lacks sound justification.  For these and other reasons, the City's new ordinance, just like its predecessor, "is not justified and is unduly burdensome when balanced against its likely burden on protected speech."  *ABA III*, 916 F.3d at 757.

As the Supreme Court has taken pains to emphasize in the compelled-disclosure context, "'[p]recision . . . must be the touchstone' when it comes to speech regulations."  *NIFLA*, 138 S. Ct. at 2376 (alteration in original) (citation omitted).  The Amended Ordinance strays far from that touchstone.  If not enjoined, this ordinance will force Plaintiffs to mislead a substantial portion of San Francisco residents as the price for advertising their lawful products.  That is unconstitutional, and the Court should grant summary judgment to Plaintiffs.

## STATEMENT OF CASE

### A.    The City Enacts The Original Ordinance

On June 25, 2015—as part of its declared "War on Big Soda"—the City and County of San

Francisco enacted S.F. Ordinance No. 100-15 (the "Original Ordinance").[5]   The Original Ordinance compelled anyone who produced, distributed, or advertised a "Sugar-Sweetened Beverage" to display a black-box warning, occupying 20% of the ad, stating:

> WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay.  This is a message from the City and County of San Francisco.

S.F. Ordinance No. 100-15 (adding S.F. Health Code § 4203), https://www.sfbos.org/ ftp/uploadedfiles/bdsupvrs/ordinances15/o0100-15.pdf.   While the ordinance required the Original Warning to appear on some key forms of advertising—including most billboards, posters, and signs—it exempted advertising in other media, including on television, in print media, and on the Internet.  *Id.*

## B. The Ninth Circuit Holds That The Original Ordinance Likely Violated The First Amendment

Plaintiffs sought a preliminary injunction on First Amendment grounds to prevent enforcement of the Original Ordinance.  This Court denied that request.  *ABA I*, 187 F. Supp. 3d at 1143.  But the Court nonetheless stayed the law's implementation pending Plaintiffs' appeal. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, No. 15-cv-03415-EMC, 2016 WL 9184999 (N.D. Cal. June 7, 2016).

A Ninth Circuit panel reversed, holding that the Original Ordinance likely violated the First Amendment.  *ABA II*, 871 F.3d at 898.  The panel majority rejected the City's argument that the ordinance could be upheld under *Zauderer*, holding that the warning's "factual accuracy" was "at a minimum, controversial," because the warning would "convey[] the "message that sugar-sweetened beverages contribute to [the listed] health conditions regardless of the quantity consumed or other lifestyle choices."  *Id.* at 895.  That message, the majority recognized, conflicts with the FDA's conclusion that sugar-sweetened beverages can be safely consumed as part of a healthy diet.  *Id.*  The panel also found the Original Warning "'misleading, and, in that sense,

---

[5] *See* City & County of San Francisco, SFGov TV, Board of Supervisors: Health Code—Sugar-Sweetened Beverage Warning for Advertisements at 29:18 (June 9, 2015), http://sanfrancisco .granicus.com/MediaPlayer.php?view_id=10&clip_id=23003; Victoria Colliver, *United front in S.F.'s war on sodas, other sweet drinks*, SFGate (Feb. 2, 2014), https://www.sfgate.com/health/ article/United-front-in-S-F-s-war-on-sodas-other-sweet-5196702.php.

untrue,'" because it would convey a comparative message that "sugar-sweetened beverages are less healthy than other sources of added sugars and calories and are more likely to contribute to obesity, diabetes, and tooth decay than other foods." *Id.* (citation omitted).

The panel further concluded—unanimously—that even if the *Zauderer* standard applied, the Original Ordinance would still likely fail because it "unduly burdens and chills protected commercial speech." *Id.* at 897; *see also id.* at 899 (Nelson, J., concurring in the judgment). It explained that "the black box warning overwhelms other visual elements in the advertisement" and "would defeat the purpose of the advertisement." *Id.* at 897. The panel majority also credited the beverage manufacturers' "unrefuted declarations" that the Original Ordinance would "effectively rule[] out advertising in a particular medium." *Id.*

After the City contended that the result in *ABA II* created a conflict with another panel's decision regarding a different government warning, *see* Pet. R'hrg, *ABA v. City & Cnty. of S.F.*, No. 16-16703 (9th Cir.), ECF 75, the Ninth Circuit vacated the panel opinion and reheard the case en banc. But the en banc court ultimately agreed, unanimously, with the panel that the Original Ordinance likely violated the First Amendment. *ABA III*, 916 F.3d at 754-57. The majority held that even assuming the *Zauderer* standard applied, the City had not met its "burden" under *Zauderer* "of proving that the warning is neither unjustified nor unduly burdensome." *Id.* at 756. To the contrary, the City's own evidence indicated that "the Ordinance's goals could be accomplished with a smaller warning." *Id.* at 757. The en banc majority "d[id] not hold that a warning occupying 10% of . . . advertisements necessarily is valid." *Id.* And because the City had not proved that the warning would be upheld even under the *Zauderer* standard, the en banc majority had no need to "decide whether the warning . . . is factually accurate and noncontroversial" and thus eligible for review under *Zauderer* in the first place. *Id.*

Judge Ikuta, the author of the panel opinion, concurred in the result. She again concluded that the Original Ordinance could not be upheld under *Zauderer* because the "accuracy of the warning is disputed," it involved "a controversial topic," and it was "unduly burdensome." *Id.* at 761. Judge Ikuta determined that the ordinance could not survive intermediate scrutiny either, because it was "not sufficiently drawn to" the City's public health interest. *Id.* at 760.

1    Judge Christen, joined by Chief Judge Thomas, agreed that the Original Ordinance did not

2    qualify for *Zauderer* review.  *Id*. at 763-67 (Christen, J., concurring in part and concurring in the

3    judgment).  She emphasized that "government-mandated messages" are permissible "only in very

4    limited contexts," *id*. at 764, and would have reversed on the basis that the Original Ordinance was

5    not "purely factual," given the City's failure to substantiate the warning's message that drinking

6    sugar-sweetened beverages contributes to all types of diabetes.  *Id*. at 765-66.

7    Judge Nguyen also concluded that the Original Ordinance likely violated the First

8    Amendment.  *Id*. at 767-69 (Nguyen, J., concurring in the judgment).  Judge Nguyen disagreed,

9    however, with the majority's determination that the *Zauderer* framework is applicable where (as

10   here) the government is not compelling a disclosure in order to cure false, deceptive, or misleading

11   commercial speech.  *Id*. at 767-68; *see also id.* at 756 (majority holding that the *Zauderer*

12   framework applies if the government claims a public health interest).

13   **C.    The City Enacts The Amended Ordinance**

14   Following the en banc ruling, this Court preliminarily enjoined enforcement of the Original

15   Ordinance.  Dkt. 134.  Then, in February 2020, the Board of Supervisors replaced that law with

16   S.F. Ordinance No. 26-20 (the "Amended Ordinance"), https://sfgov.legistar.com/View.ashx?

17   M=F&ID=8078165&GUID=AA264DC0-645D-4F27-BFE0-C4160BB20F81.  Like its precursor,

18   the Amended Ordinance requires anyone who manufactures, distributes, promotes, or sells sugar-

19   sweetened beverages to include a black-box warning on advertisements promoting those products

20   in certain media in San Francisco.  S.F. Health Code §§ 4202, 4203(a).  Also like the Original

21   Ordinance, the Amended Ordinance requires the warning to be in a typeface, layout, and color that

22   contrast with the rest of the ad, with the signal words—"SAN FRANCISCO GOVERNMENT

23   WARNING"—in all capital letters.  *Id.* § 4203(b).  The warning must also be enclosed in a border

24   the same color as the text and the same width as the "W" in "WARNING."  *Id.*

25   The Amended Ordinance continues to define "Sugar-Sweetened Beverage" as any

26   "Nonalcoholic Beverage sold for human consumption . . . that has one or more added Caloric

27   Sweeteners and contains more than 25 calories per 12 ounces of beverage."  *Id.* § 4202.  And it

28   continues to exempt numerous beverages containing sugar, including any "Milk" and "Milk

alternatives"; "[a]ny beverage that contains solely 100% Natural Fruit Juice, Natural Vegetable Juice, or combined Natural Fruit Juice and Natural Vegetable Juice"; "[a]ny product designed as supplemental, meal replacement, or sole-source nutrition"; and "[a]ny product sold in liquid form designed for use for weight reduction." *Id.* Thus, not only does the Amended Ordinance exempt many beverages with substantial calories and sugar, it also exempts particular *sugar-sweetened* beverages that would otherwise meet the law's calorie and ounce requirements—such as chocolate milk, vanilla soy milk, or even flavored alcoholic malt beverages.

Also like its predecessor, the Amended Ordinance will require the prescribed warning to be displayed on only a narrow subset of advertising in the City. The Amended Warning will not be required on any ads on television or radio; ads in any newspaper, magazine, circular, or other publication; ads on the Internet or electronic media; containers or packages for sugar-sweetened beverages; any menus or other listings or representations of foods or beverages that may be served for consumption in an establishment; ads on manufacturer or distributor vehicles; shelf tags or labels; or displays of product logos that are less than 36 square inches and unaccompanied by a display, representation, or other information promoting a sugar-sweetened beverage. *Id.*

There are two primary differences between the Amended Ordinance and the Original Ordinance, however. *First*, after the Ninth Circuit's ruling, the City had no choice but to reduce the warning's size; now, the Amended Warning must take up at least 10% of the ad. *Id.* § 4203(b). *Second*, the City changed the warning's text. *See id.* § 4203(a). The City dropped the mention of tooth decay entirely, clarified the vague reference to diabetes, and added language asserting a causal connection between sugar-sweetened beverages and weight gain:

> SAN FRANCISCO GOVERNMENT WARNING: Drinking beverages with added sugar(s) can cause weight gain, which increases the risk of obesity and type 2 diabetes.

*Id.* These textual changes do not address the two fundamental problems the original Ninth Circuit panel identified with respect to the text of the Original Warning—which they found conveyed messages that were "untrue," "misleading," and "controversial." *See supra* at 5-6. Indeed, the City's shift in wording from "*contributes to*" to "*can cause*" only heightens those problems.

The Amended Ordinance becomes operative on March 16, 2021.[6]  If it goes into effect, sugar-sweetened beverages will be the only food or beverage whose ads will require a "SAN FRANCISCO GOVERNMENT WARNING."  Dkt. 157 ¶ 4.

### D.      The Messages The Amended Warning Will Convey To Consumers

Like the Original Warning, the Amended Warning will send messages to San Francisco consumers that are squarely at odds with prevailing science, as reflected in the views of the federal government and other scientific experts.

*First*, the Amended Warning states that "[d]rinking beverages with added sugar(s) *can cause* weight gain."  S.F. Health Code § 4203(a) (emphasis added).  To use the terminology of the City's expert on health warnings, Dr. David Hammond, the Amended Warning identifies a "cause or condition" (drinking sugar-sweetened beverages) and a "health outcome" or "risk" (weight gain, as well as obesity and type 2 diabetes).  Expert Report of David Hammond, Ph.D. ¶ 31 ("Hammond Rpt."), Declaration of Richard P. Bress ("Bress Decl.") Ex. J.

That statement is false, or at least misleading and controversial.  Weight gain is a function of "the balance between the calories taken in from foods and the calories expended from metabolic processes and physical activity."  U.S. Dep't of Health and Human Services & U.S. Dep't of Agriculture, *2015-2020 Dietary Guidelines for Americans* 20 (Dec. 2015), https://health.gov/sites/default/files/2019-09/2015-2020_Dietary_Guidelines.pdf ("*2015 Dietary Guidelines*").  In other words, weight gain is "caused" by an overall energy imbalance—consuming more calories than are expended *overall*, over a period of time—as both sides' scientific experts agree.  Supplemental Expert Report of Dr. Richard A. Kahn ¶¶ 29, 73 ("Kahn Rpt."), Bress Decl. Ex. A-1; Expert Report of Walter Willett ¶ 59 ("Willett Rpt."), Bress Decl. Ex. E.  By definition, this overall energy imbalance is not "caused" by consuming any one product.  As Plaintiffs' expert Dr. Richard Kahn, the former Chief Scientific and Medical Officer of the American Diabetes Association, explains, "weight gain can occur only when *overall* energy consumption is greater than *overall* energy expenditure over a long period of time, and *no one food can be held responsible for the former*."

---

[6] The parties have stipulated that should the Court (1) grant final judgment to the City or (2) deny Plaintiffs an injunction pending appeal (should Plaintiffs seek one), the City will not enforce the Amended Ordinance until six months after the relevant ruling.  Dkt. 149 at 9-10.

Supplemental Expert Rebuttal Report of Dr. Richard A. Kahn ¶ 13 ("Kahn Reb. Rpt."), Bress Decl. Ex. A-2.  There can be no genuine dispute on this score: the FDA has explained that "U.S. consensus reports *do not support a cause and effect relationship* between added sugars consumption and risk of obesity."  81 Fed. Reg. at 33,760 (emphasis added).  Yet the Amended Warning will tell consumers the opposite.

The Amended Warning's statement that "[d]rinking" beverages containing added sugar "can cause weight gain" is also highly misleading and controversial because—lacking any mention of the critical factors of overall diet or physical activity—it will convey to reasonable consumers that the act of consumption, *in and of itself*, triggers a risk of weight gain and other serious conditions.  This message that sugar-sweetened beverages have some inherently hazardous property that can cause weight gain is reinforced by the black-box design and signal word "WARNING"—which the City's expert explains is used to convey "information about hazards" and often appears on "products that 'might' result in serious injury."  Hammond Rpt. ¶¶ 13, 30.

Moreover, the consumer survey conducted by Plaintiffs' expert Dr. Isaacson (the "Isaacson Survey") confirms that the Amended Warning will convey this message.  An overwhelming majority (84.3%) of participants shown a soda ad with the Amended Warning agreed the ad "communicate[d] or impl[ied] that *drinking* the beverage is *likely to make you gain weight*" (emphasis added)—as compared to a mere 7.6% of participants who were shown a soda ad without the warning.  Expert Rebuttal Report of Dr. Bruce Isaacson ¶ 17.ii.a ("Isaacson Rpt."), Bress Decl. Ex. D (emphasis added); *see also id.* ¶¶ 84-86.  In addition, a clear majority (56.1%) of participants shown an ad with the Amended Warning answered that the ad "communicates or implies that drinking the beverage in the ad is likely to make you gain weight or make you develop type 2 diabetes, *even if you drink it in moderation*"—whereas only 4.7% of participants shown an ad without the Amended Warning answered similarly.  *Id.* ¶ 17.iii.d (emphasis added); *see also id.* ¶¶ 93-96.  And the vast majority (76.6%) of Isaacson Survey participants who saw an ad with the Amended Warning agreed that based on what the ad communicates or implies, "you cannot drink this beverage as part of a healthy diet"—as compared to 29.8% of those who saw an ad without the warning.  *Id.* ¶ 17.v.a (emphasis omitted); *see also* ¶¶ 114-17.

1    Those messages are contrary to the view of the FDA, which has stated that beverages with

2    added sugars may be consumed in moderation as "part of a healthy dietary pattern."  FDA, Changes

3    to the Nutrition Facts Label, https://www.fda.gov/food/food-labeling-nutrition/changes-nutrition-

4    facts-label (Jan. 4, 2021) ("FDA Nutrition Facts Label") (select "Questions & Answers": answer

5    4).  It is well established that an individual can maintain a healthy diet while reserving a certain

6    portion of calories for added sugar; as discussed above, that individual will gain weight only if she

7    consumes more calories than she expends overall.  It is therefore "incorrect to imply that sugar-

8    sweetened beverages are inherently risky and should be avoided."  Kahn Rpt. ¶ 82.

9    *Second*, because the compelled statement will warn only about "beverages with added

10   sugar" and appear only on ads for a subset of beverages with added sugar—and not on every food

11   or beverage with calories, sugar, or added sugar—the Amended Warning will misleadingly convey

12   to many consumers that drinking the advertised beverage is more likely to cause weight gain and

13   related health conditions than consuming other caloric foods and beverages with similar, or even

14   greater, amounts of calories or sugar.  According to Plaintiffs' expert Professor Peter Golder, a

15   marketing professor at the Tuck School of Business at Dartmouth College, "the presence of the

16   Amended Warning will signal to many consumers that there is something uniquely and inherently

17   harmful about drinking beverages with added sugar relative to other products, *even if those*

18   *products have the same or even greater amounts of calories or sugar*."  Supplemental Expert

19   Report of Professor Peter N. Golder ¶ 63 ("Golder Rpt."), Bress Decl. Ex. B-1 (emphasis added).

20   In other words, the Amended Warning's presence on ads for certain products and absence on others

21   "will send a *comparative* message to consumers about consuming foods and beverages about

22   which the City is or is not warning."  *Id.* ¶ 64.  That is the City's very purpose: to send a signal to

23   consumers about the "health risks of *SSBs* as they make beverage choices," and thereby discourage

24   their consumption.  S.F. Health Code § 4201 (emphasis added).  The City's expert Dr. Hammond

25   confirms this.  Hammond Rpt. ¶ 45 (describing "reduc[ing] the purchase of SSBs" as a "primary

26   objective[]" of the Amended Warning).

27   Once again, corroborating survey evidence demonstrates that the Amended Warning will

28   convey this comparative message to a substantial portion of consumers.  In the Isaacson Survey,

nearly half (46.8%) of the participants who viewed an ad with the Amended Warning thought the ad "communicates or implies that drinking the beverage in the ad is more likely to make you gain weight" or "make you develop type 2 diabetes" than another beverage that has the same amount of calories but does not contain added sugar.  Isaacson Rpt. ¶¶ 103-04, 109.  Only 3.3% of participants who viewed an ad without the Amended Warning answered the same way.  *Id.*

This comparative message, too, is scientifically inaccurate.  As the FDA has explained, "added sugars, including sugar-sweetened beverages, are no more likely to cause weight gain in adults than any other source of energy."  79 Fed. Reg. at 11,904.  The body does not metabolize added sugar—including in beverages—any differently than naturally occurring sugar.  *See* 81 Fed. Reg. at 33,773 (explaining that "[a]dded sugars are not chemically different than sugars that are naturally present in foods"); Kahn Rpt. ¶¶ 40, 88; Kahn Reb. Rpt. ¶¶ 45, 56.  Likewise, the body does not metabolize a calorie from added sugar any differently than a calorie from any other source: as the FDA has explained, "foods containing . . . added sugars do not contribute to weight gain any more than another calorie source."  79 Fed. Reg. at 11,904; *see also* Kahn Rpt. ¶¶ 27, 86.

### E.     The Amended Ordinance's Effects On Plaintiffs' Speech

The undisputed evidence in the record also establishes the detrimental effects that the Amended Ordinance will have on Plaintiffs' lawful commercial speech.

The Amended Ordinance requires that a full 10% of each covered ad be devoted to the City's black-box, color-contrasted "SAN FRANCISCO GOVERNMENT WARNING."  The Amended Warning will naturally distract from the advertiser's intended positive message and discourage consumers from buying the product—which, again, is the City's aim.  As Professor Golder explains, requiring manufacturers to superimpose the City's message over 10% of their ads will "disrupt and alter the messages that consumers take away from the advertisements," undermining their purpose.  Golder Rpt. ¶ 16; *see also id.* ¶¶ 84-90.[7]  He concludes that, even though the Amended Warning is smaller than the original, "the overall design of the Amended

---

[7] Professor Golder invokes a study that evaluated consumer reactions to variations on the wording of the Original Warning, which suggested that warnings "with stronger causal language" are "likely to discourage consumers from purchasing the product."  Golder Rpt. ¶ 77 & n.74.  The Amended Warning now employs such language: "can cause" rather than "contributes to."  *Cf. ABA I*, 187 F. Supp. 3d at 1137 n.13 ("The term 'contributes' is weaker than the term 'causes' . . . .").

Warning remains intrusive and prominent," *id.* ¶ 88, and will likely "cause consumers to perceive the Amended Warning as one of the primary messages of the advertisement," *id.* ¶ 85. Not only will "the severity of the Amended Warning" detract from the message of that particular ad, *id.*, it will "tarnish [the] brand" more generally, *id.* ¶ 16; *see also id.* ¶¶ 91-96. Ads with the Amended Warning will undermine the brand's positive associations with "concepts such as 'weight gain,' 'obesity,' and 'type 2 diabetes,' or connotations such as 'danger.'" *Id.* ¶ 94.

The analysis of the City's expert Dr. Hammond supports these conclusions: he explains that because the Amended Warning denotes "explicit health consequences" that may result from drinking sugar-sweetened beverages, such beverages will be "associated with increased levels of perceived dangerousness, hazard understanding, [and] perceived injury severity." Hammond Rpt. ¶ 31. Dr. Hammond also reasons that the Amended Warning will cause consumers to develop "stronger disease likelihood perceptions" for sugar-sweetened beverages and "significantly reduce[] . . . consumption and purchasing behavior." *Id.* ¶ 44.

Both sides' survey evidence confirms Professor Golder's analysis as well. When Isaacson Survey participants were shown an ad with the Amended Warning and asked open-ended questions about what "message or messages" the ad communicated, 71.4% included a message related to *the warning*. Isaacson Rpt. ¶¶ 75-77. And 61.4% responded that the ad communicated *negative* messages about sugar-sweetened beverages, such as: "Soda is evil"; "Dr Pepper will make you fat"; "that its dangerous to drink"; and "Soda can bring happiness although it will make you fat with diabetes." *Id.* ¶¶ 77, 80-81, 83. Moreover, participants who saw the Amended Warning were significantly less likely to agree that the advertised beverage "is likely to taste good"—even though the warning says nothing at all about taste. *Id.* ¶ 85.

The City produced its own consumer survey conducted by Dr. Carol Scott (the "Scott Survey"). *See* Expert Report of Dr. Carol A. Scott ("Scott Rpt."), Bress Decl. Ex. I. Notwithstanding its methodological flaws, *see* Rebuttal Expert Report of Dr. Ran Kivetz ¶¶ 22-25, 49, 118-39 ("Kivetz Rpt."), Bress Decl. Ex. C, the results of the Scott Survey likewise demonstrate that "the addition of the Warning to the advertisements exerted a strong and consistently *detrimental* influence on brand perceptions," *id.* ¶ 18. As Plaintiffs' survey expert Dr.

Ran Kivetz observed after reviewing the Scott Survey data, the Scott Survey results demonstrated that participants exposed to the Amended Warning "[w]ere less likely to perceive brand messages"; "[i]n many cases perceived *only* messages associated with the Warning as their first impression of the advertisements"; and "[w]ere less likely to understand the advertisement to communicate that consumers should purchase the advertised beverage." *Id.* ¶ 19; *see also id.* ¶¶ 49-79.  Professor Golder, who also reviewed the Scott Survey data, similarly observed that participants exposed to the Amended Warning perceived it "to be one of the primary messages, and for some consumers *the* primary message, of the advertisement," Supplemental Expert Rebuttal Report of Professor Peter N. Golder ¶ 12 ("Golder Reb. Rpt."), Bress Decl. Ex. B-2, and found that those participants "were statistically significantly less likely to select that the advertisements communicate the messages that the brand tastes good, that it is refreshing, or even that consumers should purchase the brand," *id.* ¶ 42.  And as in the Isaacson Survey, many Scott Survey participants took away extremely negative messages from ads containing the Amended Warning, such as "Pepsi makes you fat"; "Soda causes diabetes"; and "Drinking Coke is fun and makes you temporarily happy, but is unhealthy and will kill you."  Kivetz Rpt. ¶ 72 & Table 6 (listing responses provided by Scott Survey participants).

Thus, on this record, it is undisputed that the Amended Warning will communicate to consumers that drinking the advertised product is hazardous.  Displaying that message stands to negatively impact not only consumers' perceptions of the particular beverage being advertised, but also their perceptions of the advertised brand.  Golder Rpt. ¶¶ 91, 95.  This brand harm could "be significant and possibly irreparable," reverberate far beyond San Francisco, and "have long-run implications for a company's success and financial viability."  *Id.* ¶ 96.  Ordinarily, advertising on billboards, store signs, and the like complements other forms of advertising and increases the overall effectiveness of a manufacturer's speech.  But because the Amended Warning will undermine and interfere with the intended messages of the ads on which it appears, Plaintiff ABA and three of its members—the three largest beverage companies in the country—have attested that they will cease advertising their beverages with added sugar in covered media if the Amended Ordinance takes effect.  Declaration of Kevin W. Keane ("Keane Decl.") ¶ 26; Declaration of Sean

King ("King Decl.") ¶ 28; Declaration of Taylor Marcus ("Marcus Decl.") ¶ 26; Declaration of Pamela Stewart ("Stewart Decl.") ¶ 23; *see also* Declaration of Meghan Loper ¶ 14; Declaration of Rachel Michelin ¶ 22; Golder Rpt. ¶ 16 (deeming this choice "rational").

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  As discussed below, the City bears the burden—under either potential standard of review—to establish that the Amended Warning is constitutional; thus, summary judgment for Plaintiffs is required unless a reasonable factfinder could conclude from the evidence presented that the City can meet its burden on every element of the applicable First Amendment test.

## ARGUMENT

Laws compelling private speech, just like laws restricting speech, are presumptively unconstitutional. *See NIFLA*, 138 S. Ct. at 2371; *Janus v. Am. Fed'n of State, City & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463-64 (2018) ("Compelling individuals to mouth support for views they find objectionable violates [a] cardinal constitutional command" and "seriously impinges on First Amendment rights.").  The government bears the burden of rebutting that presumption, *see NIFLA*, 138 S. Ct. at 2377, and the City cannot carry that burden here under any level of First Amendment scrutiny.  The Amended Warning is not eligible for review under the *Zauderer* standard because the City cannot show that it will convey "purely factual and uncontroversial information about the terms under which [the products bearing the warning] will be available." *See infra* Part I.  Accordingly, *Central Hudson* intermediate scrutiny applies—and the City cannot prevail under *Central Hudson* because it cannot meet its burden to show both that the law will directly advance a substantial government interest and that the City has no less-restrictive

alternative to mandating a black-box warning on private advertising.  *See infra* Part II.  Even if the Court were to find that *Zauderer* review applies, the Amended Ordinance would fail under that standard as well because the law remains unjustified and unduly burdensome.  *See infra* Part III. Plaintiffs are therefore entitled to relief on their First Amendment claim.  *See infra* Part IV.

## I.    THE AMENDED ORDINANCE IS NOT ELIGIBLE FOR *ZAUDERER* REVIEW

Ordinarily, laws like the Amended Ordinance that burden non-misleading commercial speech about lawful products are subject to intermediate scrutiny under *Central Hudson*.  *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018).  A narrow subset of compelled commercial disclosures are instead eligible for review under the standard articulated in *Zauderer*. But for a law to be eligible for *Zauderer* review, the government must show that it is compelling disclosure of only "purely factual and uncontroversial information about the terms under which . . . services [or products] will be available." *NIFLA*, 138 S. Ct. at 2372 (first alteration in original) (quoting *Zauderer*, 471 U.S. at 651).  In other words, *Zauderer* review applies *only* when the government can establish that the compelled disclosure constitutes "straightforward, evenhanded, and readily understood . . . information" about the speaker's product—for instance, the product's ingredients, nutritional content, or geographic origin.  *Am. Meat Inst. v. U.S. Dep't of Agriculture* (*AMI*), 760 F.3d 18, 34 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring in the judgment).

Obviously, to be "purely factual," the disclosure must "provide[] accurate factual information."  *ABA II*, 871 F.3d at 893.  But even a compelled statement that is "literally true" cannot be considered purely factual if it is "misleading and, in that sense, untrue."  *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 846-47 (9th Cir.), *cert. denied*, 140 S. Ct. 658 (2019).  *NIFLA* confirmed, moreover, that the disclosure must be both "purely factual" *and* "uncontroversial."  138 S. Ct. at 2372 (citation omitted).  Thus, a disclosure cannot be one-sided, *see AMI*, 760 F.3d at 22, 27; incomplete, *see id.* at 27; or subject to misinterpretation, *see R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1216-17 (D.C. Cir. 2012), *overruled in part on other grounds sub nom. AMI*, 760 F.3d at 22-23.  A "disputed" message as to which there is no

1  scientific consensus also does not qualify as uncontroversial.  *ABA II*, 871 F.3d at 895-96.[8]

2  Similarly, a compelled disclosure is misleading if it conveys a reasonably disputed message as

3  though it *were* the established consensus.  *See Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F.

4  Supp. 3d 1247, 1259-60 (E.D. Cal. 2020) (finding a compelled warning stating that a product is

5  "known to cause cancer" misleading where only one health organization had reached that

6  conclusion and many other government agencies and organizations had not).

7        The Amended Warning is not "purely factual and uncontroversial."  Plaintiffs' expert and

8  survey evidence confirms that the Amended Warning will convey inaccurate, misleading, and

9  controversial messages to a substantial portion of consumers.  The City cannot prove otherwise.

10  And that should be dispositive.  A commercial advertisement that would deceive a significant

11  minority of consumers can be barred as deceptive under federal false advertising law, *see infra* at

12  21, and the government cannot be held to a lesser standard when it compels businesses to speak.

13  Because a substantial portion of consumers will take away from the Amended Warning the

14  messages Plaintiffs allege, the mandated disclosure cannot be deemed purely factual and

15  uncontroversial and cannot qualify for the *Zauderer* standard.  The Court must apply heightened

16  scrutiny instead.

17        **A.    The Amended Warning Will Send The False, Misleading, And At Minimum
              Controversial Message That Drinking Sugar-Sweetened Beverages Can
18            Cause Weight Gain And Is Inherently Hazardous**

19        The Amended Warning states, without qualification, that the act of "[d]rinking beverages

20  with added sugar(s) *can cause* weight gain."  S.F. Health Code § 4203(a) (emphasis added).  That

21  statement is false and misleading, and at the very least controversial.

22        1.    The text of the Amended Warning is false, because consuming sugar-sweetened

23  beverages cannot itself "cause" weight gain.  Rather, weight gain is "caused" by an *overall* energy

24  imbalance, which occurs when an individual consumes more calories than she expends over time.

---

[8] The only compelled disclosures that the Supreme Court has upheld under *Zauderer* have been
disclosures mandated to prevent consumer deception.  *See NIFLA*, 138 S. Ct. at 2377-78; *Milavetz,
Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249-53 (2010); *Zauderer*, 471 U.S. at 650-
53.  The Ninth Circuit has held that disclosures compelled to advance other governmental interests
can also be eligible for review under the *Zauderer* standard.  *See ABA III*, 916 F.3d at 755.
Plaintiffs disagree, and preserve their argument to the contrary for higher-court review.  *See United
States v. Pepe*, 895 F.3d 679, 691 (9th Cir. 2018).

1   *See 2015 Dietary Guidelines* 20; Kahn Rpt. ¶¶ 29, 73; Willett Rpt. ¶ 59.  Both sides' experts agree

2   that as a matter of scientific consensus, sugar-sweetened beverages affect an individual's weight

3   only because and to the extent that these beverages *contain calories—i.e.*, like other foods and

4   beverages, such beverages contribute to the overall calories an individual consumes.  *See* Kahn

5   Reb. Rpt. ¶¶ 10-11, 13; Willett Rpt. ¶¶ 11, 25, 28, 40, 59.  *No* randomized control trial has ever

6   shown that consuming sugar-sweetened beverages causes weight gain under "isocaloric"

7   conditions, meaning that the test subject's total number of calories remains constant and all that

8   changes is the source of the calories.  *See* Kahn Rpt. ¶¶ 51-52, 76; Kahn Reb. Rpt. ¶¶ 3, 13-16;

9   Willett Rpt. ¶ 38.  As the FDA has explained, "under isocaloric controlled conditions, added

10   sugars, including sugar-sweetened beverages, are *no more likely to cause weight gain* in adults

11   than any other source of energy."  79 Fed. Reg. at 11,904 (emphasis added).

12         Because weight gain is caused by an overall energy imbalance—and not by any property

13   of any one food or beverage—it is false to say that "drinking" a sugar-sweetened beverage "can

14   cause" weight gain.  For those individuals who consume sugar-sweetened beverages and balance

15   their caloric intake and output over time, there will be no weight gain.  Kahn Rpt. ¶ 77.  Even if

16   an individual consumed sugar-sweetened beverages and experienced weight gain, it is

17   scientifically inaccurate to attribute the "cause" of that weight to any particular food or drink: their

18   "weight gain is 'caused' by the fact that they are consuming more calories than they expend over

19   time, not by any particular source of calories they imbibe."  *Id.* ¶ 78.  The FDA has concluded

20   accordingly that "U.S. consensus reports do not support a cause and effect relationship between

21   added sugars consumption and risk of obesity."  81 Fed. Reg. at 33,760.  The Amended Warning's

22   claim that such a "cause and effect relationship" exists is directly contrary to the FDA's position.

23         2.     In addition, the Amended Warning is highly misleading because—in the absence

24   of any qualification about overall diet or physical activity—it conveys the message that the act of

25   "drinking" beverages containing added sugar *in and of itself* is inherently unhealthy or risky to the

26   viewer's health.  That message is also scientifically inaccurate.  Added sugar is "generally

27   recognized as safe" by the FDA, such that it may be used in food and beverages "with no limitation

28   other than current good manufacturing practice."  21 C.F.R. §§ 184.1, 184.1866.  In fact, after this

Court's preliminary injunction ruling, the FDA *rejected* commenters' proposals to require sugar-sweetened products to carry warnings akin to the Amended Warning here—that is, warnings stating that added sugar is "linked to obesity" and "type II diabetes" or that consuming added sugar "can lead to obesity" and in turn "diabetes."   Such warnings, the FDA explained, are "not consistent with [its] review of the evidence." 81 Fed. Reg. at 33,829.   Rather, the FDA has concluded, based on the available scientific data, that sugar-sweetened beverages "can be a part of a healthy dietary pattern."   FDA Nutrition Facts Label (select "Questions & Answers": answer 4); *see also* 81 Fed. Reg. at 33,760, 33,829 (same).

Even the City has conceded that sugar-sweetened beverages "can safely be consumed in moderation."   Dkt. 55 at 9.   It previously argued that consumers would not have understood the Original Warning to imply otherwise.   *See ABA I*, 187 F. Supp. 3d at 1139 (adopting the City's argument that consumers were unlikely to understand the Original Warning to mean that "consuming beverages with added sugar is dangerous regardless of one's diet or lifestyle" (citation omitted)).   But two of three judges on the original Ninth Circuit panel disagreed and concluded that the Original Warning's "unqualified statement" about "'[d]rinking'" sugar-sweetened beverages would have conveyed to consumers that these beverages contribute to the listed health conditions "regardless of the quantity consumed or other lifestyle choices." *ABA II*, 871 F.3d at 895 (alteration in original)); *see also id.* (finding that message controversial because it is "contrary to statements by the FDA").

The textual changes to the Amended Warning do not cure that problem; to the contrary, they amplify the message that drinking sugar-sweetened beverages is hazardous and can cause weight gain through an inherent property of the beverage itself.[9]   And this Court no longer has to rely (as the Ninth Circuit panel majority did) only on common-sense reasoning to reach that conclusion: unrebutted survey evidence confirms that reasonable consumers will understand the

---

[9] The mere presence of the word "can" does not mitigate the warning's fundamentally misleading nature.   To the extent the City argues that the word "can" conveys that drinking beverages with added sugar will *possibly* cause weight gain—"it might, but it might not"—that would render the warning wholly uninformative.   And even then, the use of the word "cause" remains inaccurate and misleading; as explained above, no one food or drink can be deemed the "cause" of weight gain, because the cause is an *overall* energy imbalance over time.

1    Amended Warning to convey that sugar-sweetened beverages cannot be consumed without

2    triggering the noted health risks.  In the Isaacson Survey, an overwhelming 76.6% of participants

3    who viewed a soda ad containing the Amended Warning believed the ad "communicate[d] or

4    implie[d]" that the beverage *cannot* be consumed "as part of a healthy diet."  Isaacson Rpt. ¶¶ 114-

5    17.  And the majority (56.1%) of participants who saw the Amended Warning also agreed that the

6    ad "communicate[d] or implie[d]" that "drinking the beverage" is "likely to make you gain weight

7    or make you develop type 2 diabetes *even if you drink it in moderation*."  *Id.* ¶ 17.iii.d (emphasis

8    added); *see also id.* ¶¶ 93-96.

9            The Scott Survey does not undercut those clear results.[10]  In the portion of her survey that

10   was purportedly meant to investigate these issues (*see* Scott Rpt. ¶¶ 40-41), Dr. Scott asked

11   participants questions only about their "*attitudes and beliefs* about sugar-sweetened beverages";

12   she did *not* ask participants what ads containing the Amended Warning conveyed.  Scott Rpt. App.

13   A at 30-32, 64-66 (emphasis added).[11]  As explained in more detail in Plaintiffs' concurrently filed

14   *Daubert* challenge to this section of the Scott Survey, these questions missed the mark: to meet its

15   burden, the City must prove that the Amended Warning *communicates* purely factual and

16   uncontroversial information.  *See* Pls.' Mot. to Exclude In Part Expert Rpt. of Dr. Scott 10-15.

17   Even if participants' freestanding beliefs about the product—as opposed to their understanding of

18   the ad's messages—were relevant, the Scott Survey did not ask participants who saw the Amended

19   Warning if they believed drinking sugar-sweetened beverages "in moderation" is likely to cause

20   _____

[10] The City's warning expert, Dr. Hammond, also conducted an "experimental study" in which he
21   attempted to test the Amended Warning's impact on "consumer perceptions."  Expert Report of
     David Hammond, Ph.D. ¶ 10 ("Hammond Reb. Rpt."), Bress Decl. Ex. K.  For the many reasons
22   explained in Plaintiffs' concurrently filed motion to exclude this portion of Dr. Hammond's expert
     rebuttal report and testimony, his study should be given no weight whatsoever: Dr. Hammond
23   failed to establish his qualifications to conduct a consumer survey of this kind; he violated
     rudimentary principles for valid and reliable consumer survey design; and his questions were
24   poorly crafted and patently leading.
     [11] After asking participants questions about the messages conveyed by ads with and without the
25   Amended Warning—in which participants viewed the ads at the same time they answered—Dr.
     Scott directed participants to the "last section of the survey," which she said was intended to
26   "*focus[] on your attitudes and beliefs about* sugar-sweetened beverages."  Scott Rpt. Ex. A at 30,
     64 (emphasis added).  One of the two questions in that section asked participants the extent to
27   which they agreed with the statement: "You can offset the effects of sugar-sweetened beverages
     on weight gain by reducing the quantity you drink, doing more exercise to burn the calories, and/or
28   reducing the calories you consume in other foods."  Scott Rpt. App. A at 32, 66.  Participants were
     not shown ads when they answered that question in this "last section." *Id.*

1   weight gain or type 2 diabetes, nor whether it is possible to drink such beverages while maintaining

2   a healthy diet.  The Scott Survey is therefore nonresponsive to those Isaacson Survey findings.

3          The Isaacson Survey's results thus reinforce what is apparent on the face of the Amended

4   Warning's text: the City's compelled statement is profoundly misleading.  Based on these results,

5   the Amended Warning unquestionably would be found misleading under federal false advertising

6   law.  "In evaluating regulation of commercial speech to prevent misleading claims" in the false

7   advertising context, courts "look to whether 'consumers acting reasonably under the

8   circumstances' would understand a product claim to contain a false message." *Nicopure Labs,*

9   *LLC v. FDA*, 944 F.3d 267, 287 (D.C. Cir. 2019) (citation omitted).  The D.C. Circuit has employed

10  that same test in the First Amendment context, to determine whether speech is potentially

11  misleading and therefore subject to government regulation.  *See id.*  To satisfy that test, it is not

12  necessary to prove that *all* consumers will understand the ad to convey the false message, or that

13  the false message is the *only* one conveyed.  Instead, it is sufficient to show that a substantial

14  portion of consumers would be misled.   In enforcement actions under the Federal Trade

15  Commission Act, for instance, the FTC may prevail if just "a significant minority of reasonable

16  consumers" would "likely" interpret the ad to assert the false, misleading, or unsubstantiated claim.

17  *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015) (citation omitted); *see also*

18  *ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 610-12 (6th Cir. 2017) (10 to 15% sufficient); *FTC v.*

19  *John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1070 n.88 (C.D. Cal. 2012) (10.5% to

20  17.3% sufficient).  Similarly, a plaintiff can establish a Lanham Act false advertising claim by

21  showing a statement is "literally true but likely to mislead or confuse consumers." *Southland Sod*

22  *Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Under that standard, an ad is

23  actionable if it would mislead "a significant portion" of the public, meaning "'a statistically

24  significant part of the commercial audience.'"  *William H. Morris Co. v. Group W, Inc.*, 66 F.3d

25  255, 258 (9th Cir. 1995) (21% to 34% sufficient) (citation omitted); *see also id.* (citing 4 J. Thomas

26  McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32.54 (3d ed. 1992)).

27         It cannot be the case that the First Amendment permits the government to enjoin and punish

28  private speech that would mislead a substantial portion of consumers while allowing the

government to *compel* speech that is equally misleading.   Rather, a government-compelled statement that is likely to mislead a "significant minority of reasonable consumers" cannot qualify for *Zauderer* review because it is not the sort of "straightforward, evenhanded, and readily understood" factual disclosure that *Zauderer* permits.   *AMI*, 760 F.3d at 34 (Kavanaugh, J., concurring in the judgment).  Allowing the government to force a private party to make a statement that "may deceive consumers" would turn *Zauderer* on its head.  *ABA II*, 871 F.3d at 893.

The Isaacson Survey confirms that the Amended Ordinance will deceive more than a significant minority of reasonable consumers.  A clear majority will understand the Amended Warning to convey the message that sugar-sweetened beverages are inherently unhealthy and cannot safely be consumed in moderation.  That message is directly contrary to the scientific consensus, including the FDA's views and the City's own prior admission in this litigation.  *See supra* at 18-19.  For this reason alone, the City cannot carry its burden to prove that the Amended Warning is purely factual and uncontroversial.

**B.     The Amended Warning Will Send The False, Misleading, And At Minimum Controversial Message That Sugar-Sweetened Beverages Are More Likely Than Other Caloric Foods And Beverages To Cause Weight Gain**

The Amended Warning is also false, misleading, and at minimum controversial in a second respect:  Like the Original Warning, it unjustifiably "focus[es] on a single product" containing calories, and thereby "conveys the message that sugar-sweetened beverages are less healthy than other sources of added sugars and calories and are more likely to contribute to [the listed conditions] than other foods."  *ABA II*, 871 F.3d at 895.

Upon observing that the "SAN FRANCISCO GOVERNMENT WARNING" warns only about "beverages with added sugar(s)" and appears only on ads for such products, many consumers will infer that those beverages are more likely to cause weight gain and related adverse conditions than other foods and beverages.  After all, the Amended Warning does not warn about "consuming calories" or "consuming more calories than you expend"; it warns about "[d]rinking beverages with added sugar(s)."  It also does not appear on ads for *all* caloric foods and beverages—or even on ads for all foods and beverages with sugar—but only on ads for *beverages* with *added* sugar (and not even all of those).  A common-sense analogy (endorsed by the Ninth Circuit panel)

illustrates the point:  If the City were to mandate a warning stating "WARNING: Toyotas can cause roll-over crashes," and require it to appear *only* on ads for Toyotas, the warning would unmistakably convey that Toyotas pose a higher risk of rollovers than other cars.  *See id.* at 895 n.8.  That the City's Warning sends this comparative message should be unsurprising.  The City's admitted purpose, after all, is to send that very message: to ensure that consumers "receive information about the health risks of *SSBs*"—not all foods and beverages—"as they make *beverage* choices."  S.F. Health Code § 4201 (emphasis added).

The Isaacson Survey once again substantiates this common-sense recognition that consumers will understand the Amended Warning to convey this misleading comparative message.  Nearly half (46.8%) of participants who saw an ad with the Amended Warning responded that the ad communicated or implied that the advertised beverage was more likely to make a person gain weight or develop type 2 diabetes than an *equally caloric* beverage without added sugar.  Isaacson Rpt. ¶¶ 17.iv.d, 107-13.  For participants who saw an ad without the Amended Warning, *only 3.3%* agreed with those statements.  *Id.* ¶ 109.

The Amended Warning thus unmistakably conveys that sugar-sweetened beverages are more likely to cause weight gain and related conditions than other caloric foods and beverages.  As the Ninth Circuit panel concluded, that message is "deceptive."  *ABA II*, 871 F.3d at 895.  Again, the FDA has explained that "under isocaloric controlled conditions, added sugars, including sugar-sweetened beverages, *are no more likely to cause weight gain in adults than any other source of energy*."  79 Fed. Reg. at 11,904 (emphasis added); *see also* Kahn Rpt. ¶ 86 ("[T]here is nothing unique about sugar-sweetened beverages that makes the consumption of calories from SSBs more likely to cause weight gain than the consumption of calories from other foods or beverages.").  This is supported by the City's own expert Dr. Willett, who has previously written: "Like a kiss or a rose, a calorie is a calorie.  So five hundred calories from ice cream, five hundred calories from red meat, and five hundred from pasta will have similar effects on your weight."[12]

Nor is there any truth to the proposition that beverages with *added* sugar are inherently more likely to cause weight gain than foods or beverages with *naturally occurring* sugar.  As the

---

[12] Willett, *supra*, at 44.

1   FDA has stated, "[a]dded sugars are not chemically different than sugars that are naturally present

2   in foods."[13]   Nor are there known differences between *calories* from added sugar and those from

3   naturally occurring sugar, including in beverages.  *See* Kahn Rpt. ¶¶ 40, 88; Kahn Reb. Rpt. ¶ 45.

4   The City's experts do not attempt to establish otherwise.  *See* Kahn Reb. Rpt. ¶ 56.

5   Dr. Scott's contrary assessment about how consumers may understand the Amended

6   Warning, Scott Rpt. ¶ 11, should carry little, if any, weight.  Dr. Scott's only "comparative"

7   question asked participants the extent to which they agreed with the following:

8   > The calories in sugar-sweetened beverages would make one gain weight in a
    > different way than calories in sugar-sweetened foods, that is, a calorie consumed in

9   > a sugar-sweetened beverage has a different effect than a calorie consumed in sugar-
    > sweetened foods.

10

11   Scott Rpt. App. A at 31, 65.  Again, that question appeared in a section of the Scott Survey asking

12   the participants about their "attitudes and beliefs"—it did *not* ask what the Amended Warning

13   conveys.  *Id.* at 30-31, 64-65.  And even then, Dr. Scott's question asked participants to compare

14   two products with *added sugar*, and it did not ask whether one product was more likely to cause

15   weight gain than the other.  As a consequence, the question does not address—and its results cannot

16   rebut—Dr. Isaacson's conclusion that many consumers will understand the Amended Warning to

17   convey that beverages with added sugar are more likely to cause weight gain and type 2 diabetes

18   than other products with the same number of calories but no added sugar.

19   Because the unrebutted Isaacson Survey confirms that *at least* a "significant minority" of

20   San Franciscans will take away from the Amended Warning that sugar-sweetened beverages are

21   more likely to cause weight gain and associated adverse health conditions than other caloric foods

22   and beverages, the conclusion that the Amended Warning is misleading is inescapable and

23   indisputable.  For this reason too, the Amended Warning cannot qualify as the type of purely

24   factual and noncontroversial disclosure eligible for *Zauderer* review.

25   **C.    The City's Arguments In Support Of The Amended Warning Fail**

26   In this litigation, the City and its experts have offered three primary arguments in support

27   of the Original and Amended Warning's accuracy.  None holds up.

28

---

[13] 81 Fed. Reg. at 33,773.

1    *First*, the City previously defended the Original Warning on the basis that, while the real

2    problem is calories, the First Amendment does not require that the City put a warning on all caloric

3    foods and beverages at once: *Zauderer*, the City maintained, allows governments to "attack

4    problems piecemeal." *ABA I*, 187 F. Supp. 3d at 1137, 1140 (citation omitted) (agreeing with the

5    City).   But as the Ninth Circuit panel explained, the City's protest missed the point.   "San

6    Francisco's warning requirement . . . is problematic *because it is potentially misleading*, not

7    because it 'does not get at all facets of the problem it is designed to ameliorate.'"  *ABA II*, 871 F.3d

8    at 896 n.9 (emphasis added) (quoting *Zauderer*, 471 U.S. at 651 n.14).   In other words, that a

9    warning requirement is underinclusive may not necessarily doom the law in and of itself;[14] but it

10   *is* constitutionally fatal if the warning's underinclusiveness conveys a message that is false and

11   misleading.  As Plaintiffs' survey evidence confirms, the Amended Warning's text, format, and

12   presence *only* on ads for sugar-sweetened beverages—and the fact that it warns about "drinking"

13   those beverages, not "calories"—will lead a substantial portion of consumers to believe that those

14   beverages are inherently risky and more likely to cause weight gain than other kinds of food and

15   drinks.  This renders the warning misleading, and thus ineligible for *Zauderer* review.

16   *Second*, in an effort to explain why sugar-sweetened beverages warrant a special warning

17   about weight gain when other caloric products do not, the City's scientific experts point to the fact

18   that such beverages are a significant source of *added sugar*.  *See* Expert Rebuttal Report of Hilary

19   Seligman ¶ 13 ("Seligman Reb. Rpt."), Bress Decl. Ex. H (pointing to sugar-sweetened beverages

20   as the "largest source of added sugar in the American diet"); Expert Report of Hilary Seligman

21   ¶ 24 ("Seligman Rpt."), Bress Decl. Ex. G; Willett Rpt. ¶ 18; Expert Rebuttal Report of Walter

22   Willett ¶ 22 ("Willett Reb. Rpt."), Bress Decl. Ex. F.  They rely heavily on the Dietary Guidelines'

23   recommendation that individuals consume no more than 10% of their daily calories from added

24   sugar.  *See 2020 Dietary Guidelines* 41-42; *2015 Dietary Guidelines* 28.  And they argue that some

25   number of individuals may exceed this limit due to soda consumption alone.  *See* Willett Rpt.

26   ¶¶ 15, 17; Seligman Rpt. ¶¶ 33-35.

---

[14] As discussed *infra* at 33-34, *NIFLA* has since clarified that a compelled-disclosure law, just like a law restricting speech, may fail *Zauderer* review if it is unjustifiably underinclusive in terms of the speakers to whom it applies.  *See* 138 S. Ct. at 2377-78.

But this argument mischaracterizes the Dietary Guidelines.  The recommendation that individuals not consume more than 10% of their daily calories in the form of added sugar is not based on any finding that added sugar itself is hazardous, nor on any determination that consuming more than that amount causes weight gain.  Kahn Reb. Rpt. ¶¶ 6, 56-59; *see also supra* at 12, 23-24.  Rather, the recommendation is simply meant to help consumers allocate their allotted calories in a way that leaves room for other foods and beverages containing important nutrients.  Kahn Reb. Rpt. ¶ 58; *see* Karen B. De Salvo et al., Opinion, *Dietary Guidelines for Americans* E1, JAMA (Jan. 7, 2016, online) (Bress Decl. Ex. L) (HHS statement).  The fact that some consumers may exceed the added-sugar recommendation, and thereby fail to leave room in their diets for other nutrient-rich foods, says nothing about whether they will thereafter gain weight.  Kahn Reb. Rpt. ¶ 59.  The 10% recommendation thus provides no support for the warning's accuracy.

Relatedly, the City's experts appear to suggest that because some individuals who consume sugar-sweetened beverages fail to balance their caloric intake and output, the Amended Warning is warranted.  *See* Willett Rpt. ¶ 66; Seligman Reb. Rpt. ¶ 13.  But as discussed above, it makes no scientific sense to attribute any resulting weight gain to any one product—especially a product category that constitutes just 3% of average daily caloric intake.  *See 2020 Dietary Guidelines* 42-43.  In any event, that contention does not support the Amended Warning's eligibility for review under the *Zauderer* standard, which applies only to compelled disclosures of "information about the *terms under which . . . services [or products] will be available*."  *NIFLA*, 138 S. Ct. at 2372 (first alteration in original) (emphasis added) (citation omitted).  Here, the product category (sugar-sweetened beverages) has no inherent property—aside from calories—that could potentially lead to weight gain.  Nor is the Amended Warning phrased in a way that suggests it is speaking about risks from particular consumption and lifestyle patterns.  It simply warns the viewer that "drinking" the beverage "can cause" weight gain—full stop.  *See* Hammond Rpt. ¶ 31 (the Amended Warning "clearly identif[ies]" "[d]rinking beverages with added sugar(s)" as "the cause or condition that leads to the health effect").  And that is misleading.

*Third*, the City's expert Dr. Willett suggests that sugar-sweetened beverages "cause weight gain . . . because of their limited induction of satiety"—meaning, these beverages supposedly do

1    not induce a sufficient feeling of "fullness" and thus lead to an aggregate overconsumption of

2    calories, including from other foods.  Willett Rpt. ¶¶ 11, 61.  This line of argument is unavailing,

3    for two reasons.  *First*, Dr. Willett's hypothesis is not supported by scientific consensus.  *See* Kahn

4    Reb. Rpt. ¶¶ 62-70.  Only two trials have evaluated the effect of drinking caloric liquids—as

5    opposed to eating equally caloric solids—on subsequent weight gain.  Neither trial found that the

6    calories' form made a statistically significant difference in the subjects' resulting weight.  *Id.*

7    ¶¶ 63-65.  And while some studies—though not purporting to evaluate weight changes—have

8    concluded that liquid calories may be less satiating, those studies' reliability has been called into

9    question, and other studies have found that liquids are *not* less satiating.  *Id.* ¶¶ 66-69.  The City

10   therefore cannot show that the satiety hypothesis is scientifically uncontroversial.  *Id.* ¶ 70 (citing

11   scientists' acknowledgment of ongoing controversy in this area, including scientists cited by Dr.

12   Willett).  *Second*, even under Dr. Willett's hypothesis, it would not be the beverages alone that

13   "cause" weight gain, but instead the individual's *overall consumption*, including of other foods.

14   *See* Willett Rpt. ¶ 11 (suggesting that the problem is "incomplete compensatory reduction in solid

15   calories at subsequent meals").  And that is not what the Amended Warning says.  Rather, it states

16   that drinking sugar-sweetened beverages—and those beverages alone—"can cause" weight gain.

17        The City's various justifications simply cannot paper over the Amended Warning's

18   fundamentally inaccurate, misleading, and controversial nature.  Because the compelled statement

19   is not purely factual and uncontroversial, it does not qualify for review under *Zauderer*.

20   **II.    THE AMENDED ORDINANCE FAILS INTERMEDIATE SCRUTINY**

21        Because the Amended Ordinance does not qualify for *Zauderer* review, it is subject to

22   intermediate scrutiny under *Central Hudson*.  To meet that heightened standard of review, the City

23   must show that the Amended Ordinance both (1) "'directly advance[s]'" a "substantial"

24   governmental interest, and (2) is not "'more extensive than is necessary to serve that interest.'"

25   *CTIA*, 928 F.3d at 842 (citation omitted).  The City cannot satisfy its burden on either prong.

26        **A.    The City Cannot Prove That The Amended Ordinance Would Directly And
              Materially Advance A Substantial Government Interest**

27

28        The Amended Ordinance fails under the first *Central Hudson* prong for three reasons.

*First*, the City has no substantial interest in forcing private entities to convey misleading messages to the public. The government simply has "no legitimate reason to force retailers to affix false information on their products." *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 967 (9th Cir. 2008); *see also ABA II*, 871 F.3d at 898 n.12 (recognizing this principle). Thus, just as a company's voluntary "misleading disclosure" would lack First Amendment protection, a law *compelling* a company to make a misleading disclosure "run[s] into" a "basic First Amendment problem." *Nat'l Ass'n of Mfrs. v. SEC* (*NAM*), 800 F.3d 518, 539 (D.C. Cir. 2015) (Srinivasan, J., dissenting on other grounds). Plaintiffs are aware of no case in which a court has upheld a compelled warning under intermediate scrutiny after finding that the warning was false or misleading.[15] This Court should not break that ground.

*Second*, the Amended Ordinance will not materially advance the City's stated public-health interest, *see* S.F. Health Code § 4201, because the law's limited coverage will necessarily render it ineffective. *See NIFLA*, 138 S. Ct. at 2375 (a compelled disclosure must "achieve" the stated interest and not be fatally "'underinclusive'" (citation omitted)); *Italian Colors*, 878 F.3d at 1177 ("[T]he statute's broad swath of exemptions would undermine any ameliorative effect."); *Valley Broad. Co. v. United States*, 107 F.3d 1328, 1334-36 (9th Cir. 1997) (same). The Amended Ordinance exempts multiple forms of advertising—including ads in newspapers, magazines, television, and the Internet—from its coverage. S.F. Health Code § 4202. Because manufacturers will have the option to shift their sugar-sweetened beverage advertising to those forums, and thereby avoid undermining their messaging and harming their brands by displaying the Amended Warning, *see supra* at 12-15, they will cease advertising on covered media if the law goes into effect. *See* Keane Decl. ¶ 26; King Decl. ¶ 28; Marcus Decl. ¶ 26; Stewart Decl. ¶ 23. As a result, the vast majority of sugar-sweetened beverage advertising that reaches City residents will not bear the Amended Warning—and the City will be unable to show the ordinance will have *any* material public-health benefits. As the City's own expert acknowledges, "[f]or communications to be

---

[15] Even if the Court were to determine that the scientific views conveyed by the Amended Warning are merely "controversial" (and not outright false), the Amended Warning is still misleading—because it conveys those views as though they reflect established consensus. *See supra* at 16-17.

effective, messages must reach their target audiences." Hammond Rpt. at 20; *see also id.* ¶ 17.

The City cannot legitimately dispute the manufacturers' sworn statements that they will switch to unburdened media. The City itself previously acknowledged that "rational advertiser[s]" will "shift away from the kind of advertising that is covered by a disclosure requirement at least to some extent." Dkt. 55 at 14 n.11. To be sure, in its 2016 ruling, this Court found the companies' representations about their plans to withdraw from covered media not "credible" because tobacco companies "have still profited even with the required warnings on the tobacco products," and pharmaceutical companies continue to advertise even though they are subject to disclosure requirements. *ABA I*, 187 F. Supp. 3d at 1144-45 & n.17. But as the Ninth Circuit panel recognized, those analogies are inapt. *See ABA II*, 871 F.3d at 897 n.11. Tobacco and pharmaceutical manufacturers must place warnings on *all* of their product ads; the fact that they continue to advertise may indicate that advertising with warnings is better than not advertising at all in those unique contexts, but it says nothing about whether they would shift entirely to other media if they had the option to advertise without the warnings.[16]

*Third*, the Amended Ordinance is wildly underinclusive in another significant respect: it exempts advertising for numerous other beverages, and *all* foods, containing sugar and calories. As discussed above, the City's experts do not point to any scientific consensus that sugar-sweetened beverages have some inherent property (aside from calories) that contributes to the possibility of weight gain. *See* Willett Rpt. ¶ 11; Willett Reb. Rpt. ¶¶ 23, 25; Kahn Reb. Rpt. ¶¶ 11-12. Nor can they, since overwhelming scientific evidence unequivocally demonstrates that, as Plaintiff's own expert admits: "a calorie is a calorie." *See supra* at 18, 23. Yet the City has singled out only *this* source of calories for the Amended Warning. In *NIFLA*, the Supreme Court found this kind of "wildly underinclusive" compelled-disclosure requirement—specifically, a California law (the "licensed notice") requiring only a small subset of medical clinics to display a notice alerting visitors of the availability of state-sponsored family-planning services—

---

[16] In 2016, this Court agreed with the City's argument that Plaintiffs' declarations should be discounted as "self-serving." *ABA I*, 187 F. Supp. 3d at 1143-44. But the Ninth Circuit panel disagreed, noting that "[d]eclarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *ABA II*, 871 F.3d at 896 (quoting *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015)).

impermissible.  138 S. Ct. at 2375-76 (citation omitted).  The Court reasoned that if California truly wanted to ensure that women became aware of those state services, the law's many exemptions made little sense—revealing a "disconnect between [the law's] stated purpose and its actual scope."  *Id.* at 2376.  The same goes here:  "If the goal is to maximize [San Franciscans'] awareness" that consuming calories can lead to weight gain and other health conditions, "then it would seem that [the City] would ensure that" *all* caloric foods and beverages carry the warning— or *at least* those with sugar or even added sugar.  *Id.*  The Amended Ordinance is on all fours with *NIFLA* in this regard, and should fail intermediate scrutiny for the same reason.

### B.      The City Cannot Prove That The Amended Ordinance Is Narrowly Tailored

The City also cannot establish that the Amended Ordinance will not burden significantly more speech than "necessary" to achieve the City's stated public-health interest.  *Central Hudson*, 447 U.S. at 566.  The City's showing of the Amended Ordinance's necessity fails for three reasons.

*First*, "the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive."  *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013).  Here, one option is obvious: the City can conduct its own public health campaign to promote what it views as healthy dietary choices.  *See, e.g.*, *NIFLA*, 138 S. Ct. at 2376; *Evergreen Ass'n, Inc. v. City of N.Y.*, 740 F.3d 233, 250-51 (2d Cir. 2014); *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 651-52 (7th Cir. 2006).  Judge Ikuta recognized this in her en banc concurrence.  *See ABA III*, 916 F.3d at 762 (Ikuta, J., concurring in the result).  The City has not shown that it cannot conduct its own public health campaign, nor that such an initiative would fail to achieve the Amended Ordinance's purported aims.  The City's expert Dr. Hammond states only that compelling private speech may be more "cost-effective."  Hammond Rpt. ¶ 40.  But as the Supreme Court made crystal clear in *NIFLA*, the "First Amendment does not permit the State to sacrifice speech for efficiency."  138 S. Ct. at 2376 (citation omitted).  Indeed, the *NIFLA* Court found that the licensed notice failed intermediate scrutiny for this very reason.  *Id.*  Once again, *NIFLA* dooms the Amended Ordinance: While the City can express views about sugar-sweetened beverages through its own speech, it "cannot co-opt [manufacturers] to deliver its message for it."  *Id.*

*Second*, the Amended Warning's conspicuous size and design also mean that the Amended

1    Ordinance will "*literally* fail[]" to be "tailored."  *Blagojevich*, 469 F.3d at 652.  Although the size

2    of the Amended Warning has been reduced from 20% to 10%, it will still "cover[] a substantial

3    portion of the" ad.  *Id.* at 652 & n.13 (holding that mandated sticker covering 9.7% of product box

4    was "substantial" and failed strict scrutiny).  And the required black-box format will continue to

5    be impossible to miss (by design).  As Professor Golder concludes, "the size and format continue

6    to be overwhelming," as the Amended Warning will still be required to "'contrast by typography,

7    layout, or color with all other printed material in the SSB ad.'"  Golder Rpt. ¶ 78 (quoting the law).

8         Although the City's expert Dr. Hammond now says that 10% is the minimum effective size

9    of a warning, Hammond Rpt. ¶¶ 12, 55, he fails to point to any substantial evidence in that regard,

10   *see* Golder Reb. Rpt. ¶ 67.  The studies and guidance on which he relies do not establish 10% as

11   any sort of threshold.  *Id.* ¶¶ 68-70.  Indeed, a number of those sources indicate that warnings far

12   smaller than 10% of an ad are sufficient to communicate information to consumers.  *Id.*

13   Furthermore, Dr. Hammond's suggestion that there is a 10% size threshold is in tension with his

14   claim that the appropriate size of a warning varies based on "[s]everal factors"—including the

15   warning's concision.  Hammond Rpt. ¶ 24; *see also id.* ¶ 54 (explaining that the Amended Warning

16   "communicates a clear, concise warning message"); Golder Reb. Rpt. ¶ 71.  Once again, the City

17   cannot carry its burden to prove that a smaller warning would not be effective.

18        *Third*, the Amended Ordinance is unnecessary to the City's purported goal of "ensuring

19   [consumers] receive information about the health risks of SSBs."  S.F. Health Code § 4201.

20   Pursuant to FDA rules and voluntary industry commitment, Plaintiff ABA members' sugar-

21   sweetened beverage containers already disclose the beverage's calorie content (in multiple

22   locations), its sugar content, and—pursuant to a 2016 FDA rule—its added-sugar content

23   specifically.[17]  As a result of the latter, the City had to abandon its previous rationale for the

24   compelled ad warning: that it was necessary to "inform the public of the presence of added sugars"

25   given that "food labels do not distinguish between sugars that naturally occur in foods and added

26   sugars, making it difficult for consumers to know the amount of added sugars [in sugar-sweetened

27
28

---

[17] *See* 81 Fed. Reg. at 33,760; 83 Fed. Reg. 19,619, 19,621 (May 4, 2018); ABA, *Clear on Calories: The Calorie Label Initiative and Style Guide* (2010), http://members.ameribev.org/files/toolkits/final-aba-clear-on-calories--calorie-label-initiat.pdf.

beverages].”  Original Ordinance § 1 (adding S.F. Health Code § 4201).  Forced to come up with a new justification, the Board of Supervisors now claims that an advertisement warning is necessary “to ensure [consumers] receive information about the health risks of SSBs *as they make beverage choices*.”  S.F. Health Code § 4201 (emphasis added).  But the City’s own expert Dr. Hammond has argued that “point-of-purchase” messages—not billboards and other outdoor signs—are the ones that are “critical” to “consumer decision making.”  Dkt. 56-2 ¶ 32.  And the FDA has found (using survey data) that “consumers use the Nutrition Facts label . . . at point-of-purchase and review the nutrient contribution of . . . products,” which is why the FDA requires the declarations on the label in the first place.  81 Fed. Reg. at 33,759.  Because the City’s new justification for requiring the compelled ad warning does not hold up, it has failed to establish that the Amended Ordinance is narrowly tailored to a substantial interest under *Central Hudson*.

### III.   ALTERNATIVELY, THE AMENDED ORDINANCE FAILS UNDER *ZAUDERER*

As explained in Part I, the Amended Ordinance is not eligible for *Zauderer* review.  But even if the Court were to find a material dispute about whether the warning is purely factual and uncontroversial, the Court should grant summary judgment to Plaintiffs.  Under *Zauderer*, the government still bears the “burden to prove that the [disclosure] is neither unjustified nor unduly burdensome.”  *NIFLA*, 138 S. Ct. at 2377.[18]  The City cannot meet that burden.

#### A.   The City Cannot Prove That The Amended Ordinance Will Not Impose Undue Burdens On Speech

Although smaller than the Original Warning, the Amended Warning will still impose a substantial burden on Plaintiffs’ speech.  It is still required to appear as a visually arresting black-box “WARNING” with a large border, color-contrasted text, and bolded and capitalized typeface—all features that, both sides agree, will enhance the Amended Warning’s prominence and impact.  *See* Golder Rpt. ¶ 88 & n.93; Golder Reb. Rpt. ¶¶ 18-19; Hammond Rpt. ¶¶ 27-30;

---

[18] In its 2016 ruling, this Court reasoned that “*Zauderer* simply requires that a disclosure requirement be reasonably related to the government’s interest, and nothing more.”  *ABA I*, 187 F. Supp. 3d at 1142.  But *NIFLA* has since made clear that an indispensable part of *Zauderer* analysis is whether the disclosure is “unjustified or unduly burdensome.”  138 S. Ct. at 2377 (citation omitted); *see ABA III*, 916 F.3d at 756.  Thus, the “possible chilling effects asserted by Plaintiffs” are indeed critical to “the analytical framework under *Zauderer*.”  *ABA I*, 187 F. Supp. 3d at 1142.

*see also ABA III*, 916 F.3d at 757 (noting, in holding the Original Warning unduly burdensome, its "contrasting rectangular border" in addition to its size).  Moreover, the "increased prominence of the warning's source"—the "SAN FRANCISCO GOVERNMENT," in all capital letters—"will render the Amended Warning relatively more noticeable to consumers than the Original Warning" and even more likely to "distract[] from the advertiser's intended message."  Golder Rpt. ¶ 74.

Again, both sides' consumer surveys confirm that the Amended Ordinance will severely burden the manufacturers' speech in this way.  In both the Isaacson and Scott Surveys, participants who viewed ads with the Amended Warning were less likely to perceive the advertiser's intended message, likely to perceive the Amended Warning as a prominent message of the ad, and more likely to take away negative impressions of the product.  *See supra* at 13-14.  Consistent with those survey findings, ABA and three of its members attest that the Amended Ordinance will lead them to stop speaking in covered media entirely.  *See supra* at 14-15.  The unrebutted evidence shows that the Amended Ordinance "will chill [Plaintiffs'] protected speech."  *NIFLA*, 138 S. Ct. at 2378.

This chilling of lawful commercial advertising, moreover, is entirely "undue"—because the City cannot point to any meaningful benefits of the Amended Ordinance.  Because the law's primary effect will be to shift beverage advertising to non-covered media, few (if any) San Franciscans will see the Amended Warning, and the City will have stifled protected speech for no legitimate reason.  *See NAM*, 800 F.3d at 527 (compelled disclosure failed *Zauderer* where the government failed to show the disclosure "would 'in fact alleviate' the harms it recited 'to a material degree'" (citation omitted)).  This is a circumstance where the City could advance its aims far more effectively by conducting its own public-information campaign—in whatever media it chooses—rather than compelling private speech in a way that is destined to be futile.

**B.      The City Cannot Prove That These Burdens Are Justified**

In addition, the City cannot establish that the Amended Ordinance's impact on Plaintiffs' speech is justified.  The City has decided to force *only* sugar-sweetened beverage manufacturers to disparage their products, even though the products' purported "risk" is no different from that posed by other caloric beverages or foods.  *See NIFLA*, 138 S. Ct. at 2377-78 (holding that California's "unlicensed notice" law—which required only crisis pregnancy centers to disclose in

their premises and advertising that they lacked a medically licensed provider on staff—failed *Zauderer* in part because the law applied to "a curiously narrow subset of speakers"). As the FDA has repeatedly stated, sugar-sweetened beverages can be consumed as part of a healthy diet. *See supra* at 11, 19. Nor can it be said that beverages with added sugar account for an outsized share of calories consumed on average: the most recent Dietary Guidelines determined that beverages with added sugar account for *only 3%* of total daily calorie consumption. *2020 Dietary Guidelines* 42-43. The City's own public health data, moreover, show that the vast majority of San Franciscans (68%) consume less than *one soda per week*. *See* City & Cnty. of S.F., *Sugary Drinks Distributor Tax Advisory Committee August 2019 Data Report* 15 (2019), https://www.sfdph.org/dph/files/SDDTAC/Sugary%20Drinks%20Distributor%20Tax%202019%20Data%20Report%20Final.pdf. The City thus has no sound justification to target and burden only ads for these products for a warning about weight gain. *See NIFLA*, 138 S. Ct. at 2378 (even under *Zauderer*, courts should be "deeply skeptical of laws that distingui[sh] among different speakers, allowing speech by some but not others" (alteration in original) (citation omitted)).

As discussed above, moreover, any correlation between sugar-sweetened beverage consumption and weight gain is not due to any inherent property of those products, but instead to consumers' overall diet and level of physical activity over time—making any such association insufficient to justify a *product* warning. The Eleventh Circuit's decision in *Tillman v. Miller* is on point. 133 F.3d 1402 (11th Cir. 1998) (per curiam). *Tillman* held that Georgia could not require a workers' compensation lawyer to include in his advertising a disclosure about the penalties for committing perjury in workers' compensation actions. Because the risk of fraud did not stem from *the lawyer's services*, the court determined that Georgia was "not justified in placing . . . the burden of the cost of educating the public" about fraud penalties on the lawyer. *Id.* at 1403-04. So too here: Because the risk that some individuals may not balance their overall energy intake and output does not stem from sugar-sweetened beverages themselves, requiring beverage manufacturers to bear the cost of warning the public about the consequences of energy imbalance is unconstitutional.

Finally, *NIFLA* makes clear that a compelled disclosure must "remedy a harm that is 'potentially real not purely hypothetical.'" 138 S. Ct. at 2377 (citation omitted). *NIFLA* found

1   that the "unlicensed notice" failed that standard because California had not shown that the problem

2   the unlicensed notice was seeking to address—that women may not recognize that crisis pregnancy

3   centers are not medically licensed—actually existed.  *See id.*  The same failure of proof is present

4   here.  To the extent the City claims the Amended Warning is needed to inform San Franciscans

5   that consuming calories can lead to weight gain, or that sugar-sweetened beverages contain

6   calories, it has not shown that residents lack that knowledge.  *See* Kahn Rpt. ¶ 112.  And in light

7   of recent regulatory changes to the Nutrition Facts label, the City's previous justification for the

8   ad warning—that consumers do not know which beverages contain added sugar—has fallen away.

9   *See supra* at 31-32.  The City's compelled disclosure thus amounts to the type of "broad

10  prophylactic rule[]" that is unconstitutional even under *Zauderer*.  471 U.S. at 649.

11  **IV.    PLAINTIFFS ARE ENTITLED TO THEIR REQUESTED RELIEF**

12          Plaintiffs are entitled to declaratory relief and a permanent injunction against the Amended

13  Ordinance's enforcement.  The Declaratory Judgment Act permits courts to "declare the rights and

14  other legal relations of any interested party seeking such declaration" in "a case of actual

15  controversy."  28 U.S.C. § 2201(a).  A permanent injunction requires a showing of four factors:

16          (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available
            at law, such as monetary damages, are inadequate to compensate for that injury;
17          (3) that, considering the balance of hardships between the plaintiff and defendant,
            a remedy in equity is warranted; and (4) that the public interest would not be
18          disserved by a permanent injunction.

19  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  All four are satisfied here.  Plaintiffs

20  will suffer irreparable injury if the City is permitted to curtail their First Amendment rights, and

21  legal remedies cannot compensate for that injury.  *See Associated Press v. Otter*, 682 F.3d 821,

22  826 (9th Cir. 2012).  And the balance of hardships and public interest are best served by denying

23  the City the ability to enforce a mandate that will deprive Plaintiffs of their First Amendment

24  rights.  *See Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *Cmty. House, Inc. v. City of Boise*,

25  490 F.3d 1041, 1059 (9th Cir. 2007).

26                                          **CONCLUSION**

27          Plaintiffs respectfully request that this Court grant this motion for summary judgment,

28  declare the Amended Ordinance unconstitutional, and enjoin its enforcement.

1    Dated:  January 22, 2021        Respectfully submitted,

2

3                                              LATHAM & WATKINS LLP

4                                      By  /s/ *Richard P. Bress*
                                           Richard P. Bress
5

6                                          Steven M. Bauer (CA Bar No. 135067)
                                           LATHAM & WATKINS LLP
7                                          505 Montgomery Street
                                           Suite 2000
8                                          San Francisco, CA  94111-6538
                                           T +1.415.391.0600
9                                          F +1.415.395.8095
                                           steven.bauer@lw.com

10                                         Richard P. Bress (Admitted *Pro Hac Vice*)
                                           Michael E. Bern (Admitted *Pro Hac Vice*)
11                                         George C. Chipev (Admitted *Pro Hac Vice*)
                                           Caroline A. Flynn  (CA Bar No. 296691)
12                                         Shannon Grammel (Admitted *Pro Hac Vice*)
                                           LATHAM & WATKINS LLP
13                                         555 Eleventh Street, NW
                                           Suite 1000
14                                         Washington, DC  20004-1304
                                           T +1.202.637.2200
15                                         F +1.202.637.2201
                                           rick.bress@lw.com
16                                         michael.bern@lw.com
                                           george.chipev@lw.com
17                                         caroline.flynn@lw.com
                                           shannon.grammel@lw.com
18
                                           *Attorneys for Plaintiffs*
19                                         American Beverage Association and
                                           California Retailers Association
20

21                                     By  /s/ *Theodore B. Olson*
                                           Theodore B. Olson
22

23                                         Theodore B. Olson (CA Bar No. 38137)
                                           Andrew S. Tulumello (CA Bar No. 196484)
                                           Helgi C. Walker (Admitted *Pro Hac Vice*)
24                                         GIBSON, DUNN & CRUTCHER LLP
                                           1050 Connecticut Avenue, NW
25                                         Washington, DC  20036-5306
                                           T +1.202.955.8668
26                                         F +1.202.530.9575
                                           TOlson@gibsondunn.com
27                                         atulumello@gibsondunn.com
                                           hwalker@gibsondunn.com
28

1
2
3
4
5

Charles J. Stevens (CA Bar No. 106981)
Joshua D. Dick (CA Bar No. 268853)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA  94105-0921
T +1.415.393.8233
F +1.415.374.8469
CStevens@gibsondunn.com
jdick@gibsondunn.com

6
7

*Attorneys for Plaintiff*
California State Outdoor Advertising
Association

8

9

## ATTESTATION CLAUSE

10    Pursuant to Civil Local Rule 5-1(i)(3),  I hereby certify that I obtained in the filing of this

11 document the concurrence from all parties whose electronic signatures appear above.

12 Dated:  January 22, 2021

13

14

/s/ *Richard P. Bress*
Richard P. Bress

15

16

17

18

19

20

21

22

23

24

25

26

27

28