DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
JEREMY M. GOLDMAN, State Bar #218888
Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:    (415) 554-6762
Facsimile:    (415) 554-4699
E-Mail:       jeremy.goldman@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE AMERICAN BEVERAGE ASSOCIATION, CALIFORNIA RETAILERS ASSOCIATION, CALIFORNIA STATE OUTDOOR ADVERTISING ASSOCIATION,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　　Defendant. | Case No. 3:15-cv-03415 EMC<br><br>**CITY AND COUNTY OF SAN FRANCISCO'S MOTION TO EXCLUDE DR. RICHARD KAHN'S EXPERT TESTIMONY**<br><br>Hearing Date:　May 20, 2021<br>Time:　　　　 1:30 p.m.<br>Place:　　　　Courtroom 5, 17th Floor<br><br>Trial Date:　　October 25, 2021 |

Defendant City and County of San Francisco moves to exclude Dr. Richard Kahn's opinion testimony under Rule 702 of the Federal Rules of Evidence, as set forth below.

### ARGUMENT

"Rule 702 requires that the evidence 'assist the trier of fact,' in other words, that it be relevant. Second, it demands that the evidence be reliable." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (citations omitted). "Relevance means that the evidence will assist the trier of fact to understand or determine a fact in issue," or in other words, that it will "logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). "The reasoning between steps in a theory must be based on objective, verifiable evidence and scientific methodology of the kind traditionally used by experts in the field." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

### I. DR. KAHN'S OPINIONS ABOUT HOW CONSUMERS WOULD UNDERSTAND THE WARNING SHOULD BE EXCLUDED

Dr. Kahn—who has never published any research in the field of health warnings or risk communication—offers a host of opinions about how consumers would understand San Francisco's warning.[1] He does not discuss any relevant risk communication literature; he has not done any empirical study; and he does not provide any scientific analysis. (*See* Expert Rebuttal Report of David Hammond, Ph.D., September 18, 2020 ("HRR") ¶¶ 13, 60, Goldman Decl. Ex. F.) He offers "no methodology, peer reviewed studies, or data he relied on" in forming these opinions. *Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *2–3 (D. Ariz. Feb. 7, 2018). "The trial court's gate-keeping function requires more than simply taking the expert's word for it." *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1319 (9th Cir.1995). Because these opinions are nothing more than Dr. Kahn's own say-so, they should be excluded. *See e.g.*, *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556-57 (C.D. Cal. 2014) (expert who did no independent testing or personal research could not testify concerning consumers' interpretation of the word "natural"); *Waymo LLC v. Uber*

---

[1] (*E.g.*, Supplemental Expert Report of Dr. Richard A. Kahn, June 12, 2020 ("KSR") ¶¶ 12, 15, 16, 20, 23, 24, 26, 27, 71, 78, 79, 80, 81, 82, 84, 85, 90, 92, 112, 113, 114, 116; Supplemental Expert Rebuttal Report of Dr. Richard A. Kahn, September 18, 2020 ("KSRR") ¶¶ 53, 54, 59, 73.) The City does not attached Dr. Kahn's reports because it anticipates that they will be filed by Plaintiffs.

*Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017) (excluding opinion because expert's "*ipse dixit* and pseudo-'analysis' are nothing more than lawyer argument dressed up as expert opinion"); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (expert testimony must involve "scientific, technical, or other specialized knowledge"); *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001) (putative expert witness lacked relevant expertise).

## II. DR. KAHN'S OPINION THAT SUGAR-SWEETENED BEVERAGES DO NOT CAUSE WEIGHT GAIN INDEPENDENTLY OF THEIR CALORIC CONTRIBUTION TO THE DIET SHOULD BE EXCLUDED

Dr. Kahn opines that drinking SSBs does not cause weight gain *under circumstances in which caloric intake is held constant*, or in other words, independently of their caloric contribution to the diet. (*E.g.*, KSR ¶¶ 16, 21, 22, 24, 46, 51, 52, 55, 58, 63, 75-77, 86, 87, 89, 92-101; KSRR ¶¶ 13, 55.) Dr. Kahn nowhere discusses the City's findings in enacting the amended warning requirement; indeed, Dr. Kahn does not even claim to have reviewed them. (*See* KSR Appendix B (listing S.F. Health Code §§ 4202 and 4203(a) but omitting section 4201).) The omission is particularly striking because Dr. Kahn discusses the *former* version of S.F. Health Code § 4201 in his report. (KSR ¶ 111.) But the findings ignored by Dr. Kahn describe evidence from patterns of consumption—which shows that people who consume SSBs generally gain weight—and the fact that SSBs supply large amounts of calories with no meaningful nutrition; they contain nothing about whether SSBs can cause weight gain independently of their caloric contribution to the diet. *See* S.F. Health Code § 4201. Likewise, the text of the warning does not claim that SSBs cause weight gain independently of their caloric contribution; it expressly refers to weight gain, which, according to Dr. Kahn, the public understands to be caused by excess calories. (KSR ¶ 112.)

A court must "exclude proffered scientific evidence under Rules 702 and 403 unless [it is] convinced that it speaks clearly and directly to an issue in dispute in the case…." *Daubert*, 43 F.3d at 1321. Because the warning requirement does not rest on evidence that SSBs can cause weight gain independently of their caloric contribution and the warning makes no claim about that issue, Dr. Kahn's opinion should be excluded as irrelevant.

### III. DR. KAHN'S OPINION THAT THE HUMAN BODY METABOLIZES DIFFERENT KINDS OF SUGARS IN THE SAME WAY SHOULD BE EXCLUDED

Dr. Kahn's opinion that humans metabolize different kinds of sugars in the same way (*e.g.*, KSR ¶¶ 26, 36-40, 88; KSRR ¶ 56) is similarly irrelevant. The warning does not claim that sugars are metabolically different, and the findings underlying the warning requirement likewise do not rest on such a claim. The reason to distinguish between added and naturally occurring sugars is furnished by evidence from dietary patterns. *See, e.g.*, 81 Fed. Reg. 33742, 33814 (May 27, 2016) ("The addition of added sugars to foods provides additional calories which can make it difficult for consumers to meet nutrient needs within calorie limits and can lead to issues with weight management…. The intake of foods with naturally occurring sugars, such as fresh fruits and vegetables, is encouraged as part of a healthy dietary pattern and not recommended to be reduced."); *id.* at 33762 (rejecting the contention that there is "no material difference between added sugars and intrinsic sugars for purposes of achieving a healthy dietary pattern to avoid excess discretionary calories from added sugars and reduced risk of chronic disease"); 2020-2025 Dietary Guidelines for Americans, ch. 1, p. 32 (half of recommended daily fruit intake may come from fruit juice), Goldman Decl Ex. L; *id.*, ch. 2, p. 62 ("Drinks labeled as fruit drinks … are not the same as 100% fruit juice and contain added sugars. These beverages displace nutrient-dense beverages and foods in the diet of young children."); Expert Rebuttal Report of Walter Willett, September 18, 2020 ("WRR") ¶ 32 (explaining, that, unlike with SSBs, the scientific evidence does not support a link between weight gain and foods that contain natural sugars, like fruit, vegetables, and dairy), Goldman Decl. Ex. I. Because the validity of the warning does not turn on evidence about whether the human body metabolizes different sugars in different ways, Dr. Kahn's opinion on this issue should be excluded as irrelevant.

### IV. DR. KAHN'S OPINION THAT THE SOURCE OF CALORIES IS UNIMPORTANT TO WEIGHT GAIN SHOULD BE EXCLUDED

Dr. Kahn leaps from his opinions that SSBs do not cause weight gain independently of their caloric contribution and that there is no difference in the body's processing of different sugars to the conclusion that the source of calories has no impact on weight gain in the real world. He writes, for example: "Importantly, sucrose and HFCS at the same concentration have no known metabolic differences. So there is no difference between how humans metabolize 'added sugar' and how they

metabolize sugar that is naturally present in a food or beverage. *This means that there is no difference between added sugar or naturally occurring sugar in foods or beverages in terms of their impacts on health—including whether they cause weight gain.*" (KSR ¶ 40 (emphasis added); *see also, e.g., id.* ¶ 27 (contending that because the body does not distinguish between sources of calories, it does not matter where they come from); KSRR ¶ 5.) Dr. Kahn's premises do not warrant his conclusion because he fails to consider the effect of actual dietary patterns. *See Gen. Elec. Co. v. Joiner*, 522 US. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999) ("the expert opinion must be supported by an adequate basis in relevant facts or data").

At one point in his rebuttal report, Dr. Kahn dismisses evidence from "one-meal studies" on the ground that they "do not represent how people actually eat in the real world." (KSRR ¶ 68.) But studies in which caloric intake is artificially restricted or statistically adjusted also do not represent how people actually eat in the real world. (*See* WRR ¶ 25.) A contention that the source of calories is irrelevant when actual dietary patterns are taken into account is not supported by scientific evidence (WRR ¶¶ 30-31) and, indeed, is contrary to the conclusions expressed in the Dietary Guidelines and by the FDA. While it may be that Dr. Kahn intended to include the qualification "under isocaloric conditions" that he makes elsewhere, the fact that he failed to do so demonstrates that his opinion should be excluded as unreliable and unwarranted by the evidence.

V. **THE COURT SHOULD EXCLUDE DR. KAHN'S OPINIONS ABOUT WHETHER THE WARNING WILL IMPROVE PUBLIC HEALTH**

Dr. Kahn opines that the warning may not reduce rates of obesity or type 2 diabetes or reduce overweight. (*E.g.* KSR ¶¶ 28, 104-116.) These opinions are speculative and unreliable, and they are also irrelevant. In part, they rest on Dr. Kahn's opinions about how consumers are likely to understand the warning (*e.g.*, KSR ¶¶ 109, 112-14)—opinions that are themselves unscientific and unsupported. An expert witness may not offer "unsupported speculation and subjective beliefs." *Guidroz-Brault*, 254 F.3d at 829.

Dr. Kahn hypothesizes that, if people decide to reduce or eliminate SSBs from their diets based on the warning, they "may substitute others that are of equal or higher caloric content (e.g., fruit juice

or beer substituted for an SSB)." (KSR ¶ 28; *see also* ¶ 115 (stating that the warning "might" cause consumers to choose more caloric options); KSRR ¶ 74.) While Dr. Kahn asserts that his "concerns are not merely hypothetical," the evidence he cites shows the opposite. *See Joiner*, 522 U.S. at 146. He cites a study which found that Australian adults who habitually avoid SSBs have higher intakes of alcoholic beverages than those who include SSBs in their diets. (KSR ¶ 115; Goldman Decl. Ex. R [Wong THT, Buyken AE, Brand-Miller JC, Louie, JCY. Is there a soft drink vs. alcohol seesaw? A cross-section analysis of dietary data in the Australian Health Survey 2011-12. Eur J Nutr. (2020) 59:2357–2367].) But a cross-sectional population survey at a single point in time (*i.e.*, that does not even analyze data trends over time) cannot establish how people who consume SSBs will respond to a warning label about the risks of weight gain. (HRR ¶ 64; WRR ¶ 51.)[2] Indeed, in his report, Kahn claimed that "ecological reports" based on population-wide survey measures "have little or no ability to control for important variables" and are viewed as "the least reliable source of information." (KSR ¶ 50; *see* Expert Report of David Hammond, Ph.D., June 12, 2020 ("HSR") ¶¶ 63-64, Goldman Decl. Ex. A.) Dr. Kahn has no reliable methodology if he relies on a particular kind of research when it supports his opinions and rejects it when it does not. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176, 1179 (N.D. Cal. 2007). Moreover, the cited study itself found that alcohol consumption was higher only among those who reported zero SSB intake, and otherwise found no association between the two. (HSR ¶ 63; *see* Goldman Decl. Ex. R at 2361-62.) Dr. Kahn also cites a UK study finding that increased prices of full-calorie SSBs were associated with higher sales of beer. (KSR ¶ 115.) But he fails to note that the study also found that an increase in the price of medium-sugar drinks *reduced* purchases of alcoholic drinks, and the authors' ultimate conclusion was that "increasing the price of SSBs has the potential to both decrease and increase the purchase of alcohol across all income groups," making its significance speculative and uncertain. (HSR ¶ 65; WRR ¶ 51; Goldman Decl. Ex. S [Quirmbach D Dr, Cornelsen L, Jebb SA, Marteau T, Smith R. Effect of increasing the price of sugar-sweetened beverages on alcoholic

---

[2] The authors of the study themselves wrote: "One limitation of this study is that causation cannot be determined due to the cross-sectional nature of this analysis, while unmeasured or residual confounding factors may have an impact on the results." (Goldman Decl. Ex. R, at 2365.)

beverage purchases: an economic analysis of sales data. J Epidemiol Community Health. 2018;72(4):324-330, at 328].)

Finally, Kahn cites a 2013 review of global taxes on SSBs and foods high in fat, which found that the taxes *did* influence the consumption of the taxed products but did not find a significant effect on obesity-related outcomes, which the researchers "hypothesized" might be the result of product substitution. (KSR ¶ 115; Goldman Decl. Ex. T [Maniadakis N, Kapaki V, Damianidi L, Kourlaba G. A systematic review of the effectiveness of taxes on nonalcoholic beverages and high-in-fat foods as a means to prevent obesity trends. Clinicoecon Outcomes Res. 2013;5:519-543].) Dr. Kahn's reliance on this study is inconsistent with his rejection of ecological studies as discussed above (*see* WRR ¶ 16), and the researchers' "hypothesis" about a possible explanation is not scientific evidence that the hypothesis is true (HRR ¶ 67). The study also did not estimate substitutions for the taxed products and—as Kahn notes—combined studies of SSB taxes with those that considered taxes on other foods. (WRR ¶ 51.) Moreover, Dr. Kahn failed to address in his opening report to address studies published after 2013, which are the only ones to evaluate the effect of SSB taxes that have been implemented in the United States. (HRR ¶ 67.) Those studies found that sales of bottled water increased after taxes were imposed on sales of SSBs, and other research has demonstrated that consumers do not substitute equal amounts of calories from other sources when they reduce consumption of SSBs. (WRR ¶¶ 16, 49-50; HRR ¶¶ 21-24, 67.)

It is within a court's "discretion to conclude that the studies upon which the experts relied were not sufficient, whether individually or in combination, to support their conclusions…." *Joiner*, 522 US. at 146-47. The studies cited by Dr. Kahn do not establish that consumers who are persuaded by the City's health warning to reduce their consumption of SSBs because they are concerned about weight gain are likely simply to substitute equally caloric alternatives in like quantities. Indeed, Dr. Kahn's hypothesis is inconsistent with his own contention that the public understands weight gain to be caused by excess calories. (KSR ¶ 112.) And Dr. Kahn does not claim to have conducted any research into the effect of warning labels on purchasing behavior, nor does he address the published studies discussed by the City's experts. (*See* HSR 44-46; SR ¶ 43; HRR ¶¶ 21-24.)

Ultimately, Dr. Kahn's opinions about whether the warning will improve public health are speculative, and should be excluded for that reason.  But they are also irrelevant because the City does not have to prove that the warning will cause specific changes in consumer behavior in order to justify providing the public with information about health risks.  *See* 81 Fed. Reg. at 33763-64 (government need not show that specific changes in consumer behavior will occur in order to justify providing consumers with additional information).

## CONCLUSION

As set forth above, Dr. Kahn offers opinions that are irrelevant, that do not involve any specialized knowledge or expertise, and that are inadequately supported by the evidence he cites.  Accordingly, they should be excluded.

Dated:  January 22, 2021

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
JEREMY M. GOLDMAN
Deputy City Attorneys


By: /s/*Jeremy M. Goldman*
JEREMY M. GOLDMAN

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO